# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT DAVIS, NIALL ADAMS, MYA BATTON, THEODORE BISBICOS, AARON BOLTON, JASON BOOMSMA, THOMAS BRAUN, SABRINA CLARK, RYAN EISNER, STEVEN EWALD, JOHN GARRETT, BRENNON GROVES, DARIN HENDRY, ANNA JAMES, DO YEON IRENE KIM, JAMES LUTZ, JORDAN KULLMANN, JAMES MULLIS, DANIEL PARSONS, JOSHUA PUTT, JOHN SANNAR, ROBERT SAYLES, BEN SHADLE, BRENT STRINE, CHRISTINE VAN WOERKON, AND SHERRIE WOHL, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-2374-WB **Hon. Wendy Beetlestone** |
| Plaintiffs, | |
| v. | |
| HANNA HOLDINGS, INC., | |
| Defendant. | |

## BRIEF IN SUPPORT OF HANNA HOLDINGS'
## MOTION TO DISMISS FOR LACK OF STANDING AND MOOTNESS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

      A.    Home Sellers Typically Pay The Buyer Broker's Commission ............................ 2

      B.    Plaintiffs Purchased Homes Using Buyer Agents Whom They Did Not Pay ........ 3

      C.    Plaintiffs Bring This Lawsuit Against Hanna Holdings ........................................ 4

ARGUMENT ..................................................................................................................... 4

I.     Plaintiffs Lack Article III Standing To Pursue State Law Claims For 13 States
      In Which They Did Not Reside Or Suffer Injury ................................................. 5

II.    Plaintiffs' Sherman Act Claim Must Be Dismissed For Lack Of Article III
      Justiciability On Both Standing And Mootness Grounds ..................................... 6

III.   Plaintiffs Lack Antitrust Standing To Bring Any Antitrust Claim ...................... 8

      A.    Plaintiffs Lack Antitrust Standing To Bring Their Sherman Act
           Claim Under *AGC* ....................................................................................... 8

      B.    Plaintiffs Lack Antitrust Standing To Bring Their State Antitrust
           Claims, To Which *AGC* Or A Similar Test Applies ............................... 13

IV.   Plaintiffs Lack Standing To Bring Numerous Consumer Protection Claims .................. 21

V.    Plaintiffs Lack Standing To Bring Unjust Enrichment Claims As
      Indirect Purchasers In Illinois, Missouri, and Florida ......................................... 23

CONCLUSION ................................................................................................................. 24

# **TABLE OF AUTHORITIES**

**Page(s)**

## **FEDERAL CASES**

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013)................................................................................................8

*Ashley Furniture Industries, Inc. v. Packaging Corp. of America*,
    275 F. Supp. 3d 957 (W.D. Wis. 2017) ...............................................................21

*Associated General Contractors of California v. California State Council of
    Carpenters*, 459 U.S. 519 (1983)............................................................2, 8, 9, 12, 19

*AT&T Communications of N.J., Inc. v. Verizon N.J., Inc.*,
    270 F.3d 162 (3d Cir. 2001)..................................................................................4

*Aviles v. Wayside Auto Body, Inc.*,
    49 F. Supp. 3d 216 (D. Conn. 2014).....................................................................22

*Baldwin v. University of Pittsburgh Medical Center*,
    636 F.3d 69 (3d Cir. 2011)....................................................................................5

*Ballentine v. United States*,
    486 F.3d 806 (3d Cir. 2007)..................................................................................5

*Batton v. NAR* (*Batton I*),
    2024 WL 689989 (N.D. Ill. Feb. 20, 2024) .............................................10, 12, 13

*Busby v. Capital One, N.A.*,
    772 F. Supp. 2d 268 (D.D.C. 2011) ......................................................................22

*Carefirst of Maryland, Inc. v. Johnson & Johnson*,
    2024 WL 3858249 (E.D. Va. Aug. 16, 2024).................................14, 16, 18, 20, 21

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986)...............................................................................................7

*In re Cattle & Beef Antitrust Litigation*,
    687 F. Supp. 3d 828 (D. Minn. 2023).......................................................15, 18, 20

*Chafin v. Chafin*,
    568 U.S. 165 (2013)...............................................................................................8

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983).................................................................................................7

*Clark v. Governor of N.J.*,
    53 F.4th 769 (3d Cir. 2022) ...................................................................................8

*Connelly v. Lane Construction Corp.*,
    809 F.3d 780 (3d Cir. 2016) ..................................................................................5

*Contant v. Bank of America Corp.*,
    2018 WL 1353290 (S.D.N.Y. Mar. 15, 2018) ......................................................19

*D.R. Ward Construction Co. v. Rohm & Haas Co.*,
    470 F. Supp. 2d 485 (E.D. Pa. 2006) ..................................................................13

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*,
    2015 WL 3988488 (N.D. Ill. June 29, 2015) ..............................13, 15, 16, 17, 19

*In re Dealer Management Systems Antitrust Litigation*,
    362 F. Supp. 3d 510 (N.D. Ill. 2019) .........................................15, 17, 18, 20, 21

*Donovan v. Digital Equipment Corp.*,
    883 F. Supp. 775 (D.N.H. 1994) .........................................................................18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .........................................................14, 19

*In re Flonase Antitrust Litigation*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ..................................................................23

*GEICO Corp. v. Autoliv, Inc.*,
    345 F. Supp. 3d 799 (E.D. Mich. 2018) ..............................................................21

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
    368 F. Supp. 3d 814 (E.D. Pa. 2019) ..................................................................16

*In re Horizon Healthcare Services Inc. Data Breach Litigation*,
    846 F.3d 625 (3d Cir. 2017) ..................................................................................5

*Host International, Inc. v. MarketPlace, PHL, LLC*,
    32 F.4th 242 (3d Cir. 2022) ..............................................................................4, 8

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .................................................................................9, 14, 23

*In re Interior Molded Doors Antitrust Litigation*,
    2019 WL 4478734 (E.D. Va. Sept. 18, 2019) .....................................................20

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    232 F.3d 979 (9th Cir. 2000) ...............................................................................15

*Leeder v. NAR*,
   601 F. Supp. 3d 301 (N.D. Ill. 2022) ......................................................................10, 12, 13

*Lifewatch Services Inc. v. Highmark Inc.*,
   902 F.3d 323 (3d Cir. 2018)............................................................................................9

*In re Lower Lake Erie Iron Ore Antitrust Litigation*,
   998 F.2d 1144 (3d Cir. 1993).......................................................................................9, 11

*McCarthy v. Recordex Service, Inc.*,
   80 F.3d 842 (3d Cir. 1996).............................................................................................9

*McGarry & McGarry, LLC v. Bankruptcy Management Solutions, Inc.*,
   937 F.3d 1056 (7th Cir. 2019) ......................................................................................15

*McNair v. Synapse Group Inc.*,
   672 F.3d 213 (3d Cir. 2012)...........................................................................................7

*In re Niaspan Antitrust Litigation*,
   42 F. Supp. 3d 735 (E.D. Pa. 2014) ...........................................................................6, 23

*Oliver v. American Express Co.*,
   2021 WL 386749 (E.D.N.Y. Feb. 1, 2021).....................................................................20

*Ortiz v. Sig Sauer, Inc.*,
   448 F. Supp. 3d 89 (D.N.H. 2020)..................................................................................5

*In re Refrigerant Compressors Antitrust Litigation*,
   2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)............................................................18, 21

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012)...........................................................................................5

*Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*,
   22 F.4th 103 (2d Cir. 2021) ........................................................................................15

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) .............................................................................23

*Sturgeon v. Pharmerica Corp.*,
   438 F. Supp. 3d 246 (E.D. Pa. 2020) ..............................................................................8

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litigation*,
   64 F. Supp. 3d 665 (E.D. Pa. 2014),
   *on reconsideration in part*, 2015 WL 12910728 (E.D. Pa. Apr. 14, 2015).......................6, 23

*Supreme Auto Transportation LLC v. Arcelor Mittal*,
   238 F. Supp. 3d 1032 (N.D. Ill. 2017) ...........................................................................20

iv

*Tri-State Rubbish, Inc. v. Waste Management, Inc.*,
    998 F.2d 1073 (1st Cir. 1993) ................................................................17

*Warren General Hospital v. Amgen Inc.*,
    643 F.3d 77 (3d Cir. 2011) ....................................................................11

*In re Wellbutrin XL Antitrust Litigation*,
    260 F.R.D. 143 (E.D. Pa. 2009) ...............................................................6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) ...................................................................................7

## STATE CASES

*Beckler v. Visa U.S.A., Inc.*,
    2004 WL 2115144 (N.D. Dist. Aug. 23, 2004) .....................................19

*City of New York v. Smokes-Spirits.com, Inc.*,
    911 N.E.2d 834 (N.Y. 2009) ...................................................................23

*Clayworth v. Pfizer, Inc.*,
    233 P.3d 1066 (Cal. 2010) ......................................................................14

*Crouch v. Crompton Corp.*,
    2004 WL 2414027 (N.C. Super. Oct. 28, 2004) ...................................19

*Fucile v. Visa U.S.A., Inc.*,
    2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ...............................20

*Hawaii Medical Association v. Hawaii Medical Service Association, Inc.*,
    148 P.3d 1179 (Haw. 2006) ....................................................................15

*Ho v. Visa USA, Inc.*,
    793 N.Y.S.2d 8 (N.Y. App. Div. 2005) .................................................19

*Kanne v. Visa U.S.A. Inc.*,
    723 N.W.2d 293 (Neb. 2006) .................................................................18

*Knowles v. Visa U.S.A., Inc.*,
    2004 WL 2475284 (Me. Super. Oct. 20, 2004) .....................................17

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007) ...............................................................17

*Madison Cablevision, Inc. v. City of Morganton*,
    386 S.E.2d 200 (N.C. 1989) ...................................................................19

*Marin County Board of Realtors, Inc. v. Palsson*,
    549 P.2d 833 (Cal. 1976) ........................................................................14

*Nass-Romero v. Visa U.S.A. Inc.*,
    279 P.3d 772 (N.M. Ct. App. 2012)................................................................18

*Nevada Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*,
    423 P.3d 605 (Nev. 2018)..........................................................................18

*Peterson v. Visa U.S.A., Inc.*,
    2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005)................................21

*Rafferty v. Merck & Co.*,
    92 N.E.3d 1205 (Mass. 2018)....................................................................22

*Reynolds v. Ryland Group, Inc.*,
    531 S.E.2d 917 (S.C. 2000).......................................................................22

*Rose v. Vulcan Materials Co.*,
    194 S.E.2d 521 (N.C. 1973).......................................................................19

*Southard v. Visa U.S.A. Inc.*,
    734 N.W.2d 192 (Iowa 2007)....................................................................16

*Sperry v. Crompton Corp.*,
    863 N.E.2d 1012 (N.Y. 2007)....................................................................18

*State ex rel. Spitzer v. Daicel Chemical Industries, Ltd.*,
    840 N.Y.S.2d 8 (N.Y. App. Div. 2007)...............................................19, 23

*Stark v. Visa U.S.A. Inc.*,
    2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)...................................17

*Strang v. Visa U.S.A., Inc.*,
    2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) .......................................21

*Sullivan v. Pulte Home Corp.*,
    290 P.3d 446 (Ariz. Ct. App. 2012)..........................................................22

*Town of Belhaven v. Pantego Creek, LLC*,
    793 S.E.2d 711 (N.C. Ct. App. 2016)........................................................22

*Tremont Public Advisors, LLC v. Connecticut Resources Recovery Authority*,
    217 A.3d 953 (Conn. 2019) ......................................................................15

*Vinci v. Waste Management, Inc.*,
    36 Cal. App. 4th 1811 (1995)....................................................................15

*Wrobel v. Avery Dennison Corp.*,
    2006 WL 7130617 (Kan. Dist. Ct. Feb. 1, 2006)......................................16

## DOCKETED CASES

*1925 Hooper LLC v. NAR*,
    No. 1:23-cv-05392 (N.D. Ga.) ............................................................... 12

*Burton v. NAR*,
    No. 7:23-cv-05666 (D.S.C.) ................................................................... 12

*Gibson v. NAR*,
    No. 4:23-cv-00788 (W.D. Mo.) ......................................................... 10, 12

*Martin v. Texas Association of Realtors, Inc.*,
    No. 4:23-cv-01104 (E.D. Tex.) .............................................................. 12

*Moehrl v. NAR*,
    No. 1:19-cv-01610 (N.D. Ill.) ................................................................ 12

*QJ Team, LLC v. Texas Association of Realtors*,
    No. 4:34-cv-01013 (E.D. Tex.) .............................................................. 12

*Sitzer v. NAR*,
    No. 4:19-cv-00332 (W.D. Mo. Apr. 19, 2024) ........................................ 8

## STATE STATUTES

740 Comp. Ill. Stat. § 10/11 ..................................................................... 15

740 Ill. Comp. Stat. § 10/7(2) .................................................................. 16

Ariz. Rev. Stat. Ann. § 44–1412 ............................................................... 14

D.C. Code Ann. § 28-4515 ....................................................................... 21

Haw. Rev. Stat. § 480-3 ........................................................................... 15

Iowa Code Ann. § 553.2 ........................................................................... 16

Kan. Stat. Ann. § 50–163(b) ..................................................................... 16

Md. Code Ann. Com. Law § 11-202(a)(1)(2) ............................................. 16

Me. Rev. Stat. Ann. Tit. 10, §§ 1101 et seq. ............................................. 17

Mich. Comp. Laws § 445.784(2) ............................................................... 17

N.H. Rev. Stat. Ann. § 356:14 .................................................................. 18

N.M. Stat. Ann. § 57-1-15 ........................................................................ 18

Neb. Rev. Stat. Ann. § 59-829 ........................................................................................17

Or. Rev. Stat. § 646.715(2) ..........................................................................................19

R.I. Gen. Laws Ann. § 6-36-2(b) ..................................................................................20

Utah Code Ann. § 76-10-3118 ......................................................................................20

Vt. Stat. Ann. tit. 9, § 2453a(c) ....................................................................................20

W. Va. Code Ann. § 47-18-16 ......................................................................................21

**TABLE OF CLAIMS**

| Claim | Basis for Dismissal |
|---|---|
| Sherman Act claim | • Lack of Article III standing to seek injunctive relief; and<br>• Lack of antitrust standing under *AGC* |
| Arizona antitrust claim | • Lack of antitrust standing under *AGC* |
| Arizona consumer protection claim | • Lack of standing because no Arizona-based named Plaintiff has a commercial relationship with Hanna Holdings |
| California antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in California; and<br>• Lack of antitrust standing under *AGC* |
| California consumer protection claim | • Lack of Article III standing |
| Connecticut antitrust claim | • Lack of antitrust standing under Connecticut's *AGC*-like test |
| Connecticut consumer protection claim | • Lack of standing because no Connecticut-based named Plaintiff has a commercial relationship with Hanna Holdings |
| Florida unjust enrichment claim | • Lack of standing because of *Illinois Brick* |
| Hawaii antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Hawaii; and<br>• Lack of antitrust standing under *AGC* |
| Illinois antitrust claim | • Lack of antitrust standing under *AGC* |
| Illinois unjust enrichment claim | • Lack of standing because of *Illinois Brick* |
| Iowa antitrust claim | • Lack of antitrust standing under *AGC* |
| Kansas antitrust claim | • Lack of Article III standing<br>• Lack of antitrust standing under *AGC* |
| Maine antitrust claim | • Lack of antitrust standing under *AGC* |
| Maryland antitrust claim | • Lack of antitrust standing under *AGC* |
| Massachusetts consumer protection claim | • Lack of standing because no Massachusetts-based named Plaintiff has a commercial relationship with Hanna Holdings |
| Michigan antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Michigan; and<br>• Lack of antitrust standing under *AGC* |
| Michigan consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Michigan |
| Minnesota antitrust claim | • Lack of antitrust standing under Minnesota antitrust standing doctrine |

| | |
|---|---|
| Missouri consumer protection claim | • Lack of standing because Plaintiffs' claims are too indirect |
| Missouri unjust enrichment claim | • Lack of standing because Plaintiffs' claims are too indirect |
| Montana consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Montana |
| Nebraska antitrust law claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Nebraska; and<br>• Lack of antitrust standing under *AGC* |
| Nebraska consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Nebraska |
| Nevada antitrust claim | • Lack of antitrust standing under *AGC* |
| New Hampshire antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in New Hampshire; and<br>• Lack of antitrust standing under *AGC* |
| New Hampshire consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in New Hampshire |
| New Jersey consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in New Jersey |
| New Mexico antitrust claim | • Lack of antitrust standing under *AGC* |
| New York antitrust claim | • Lack of antitrust standing under *AGC* |
| New York consumer protection claim | • Lack of standing because of *Illinois Brick* |
| North Carolina antitrust claim | • Lack of antitrust standing under *AGC* |
| North Carolina consumer protection claim | • Lack of standing as to all named Plaintiffs but Davis because no North Carolina-based named Plaintiff has commercial relationship with Hanna Holdings |
| North Dakota antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in North Dakota; and<br>• Lack of antitrust standing under *AGC* |
| Oregon antitrust claim | • Lack of antitrust standing under *AGC* |
| Pennsylvania consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Pennsylvania |
| Rhode Island antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Rhode Island; and<br>• Lack of antitrust standing under *AGC* |

| | |
|---|---|
| Rhode Island consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Rhode Island |
| South Carolina consumer protection claim | • Lack of standing because no South Carolina-based named Plaintiff has a commercial relationship with Hanna Holdings |
| Utah antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Utah; and<br>• Lack of antitrust standing under *AGC* |
| Vermont antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Vermont; and<br>• Lack of antitrust standing under *AGC* |
| Washington, D.C. antitrust claim | • Lack of antitrust standing under *AGC* |
| Washington, D.C. consumer protection claim | • Lack of standing because no D.C.-based named Plaintiff has a commercial relationship with Hanna Holdings |
| West Virginia antitrust claim | • Lack of antitrust standing under *AGC* |
| Wisconsin antitrust claim | • Lack of antitrust standing under *AGC* |

**INTRODUCTION**

Plaintiffs' Amended Complaint—like the original complaint—fails out of the gate because Plaintiffs lack standing to pursue their federal antitrust claim and nearly all of their state law claims.  Plaintiffs already amended their complaint in response to Hanna Holdings' first motion to dismiss raising these same arguments; it is now clear that further amendment is futile and dismissal should be granted with prejudice.

*First*, almost half of Plaintiffs' state law claims must be dismissed for lack of Article III standing.  Despite the opportunity to amend their complaint, Plaintiffs continue to assert state-law claims without regard to whether any of the named Plaintiffs' injuries have any connection whatsoever to those states.  But to have standing to bring a claim under the law of a particular state, a named plaintiff must either reside in that state or have purchased the product at issue in that state.  The claims brought under the laws of the 13 states where no Plaintiff resides or bought a home must therefore be dismissed.

*Second*, Plaintiffs' Sherman Act claim must be dismissed both because Plaintiffs lack Article III standing to pursue injunctive relief, which is the only relief they seek through that claim, and because their request for injunctive relief is moot.  Plaintiffs acknowledge that most people buy homes only a few times in their lives and nowhere allege that they have any plans to purchase a home again in the future.  They therefore have not plausibly alleged that they are likely to suffer any future injury because of Hanna Holdings' alleged conduct, as required to demonstrate standing for prospective relief.  And even if Plaintiffs had alleged that they are likely to purchase a home again in the future, their claim for injunctive relief should be dismissed as moot because of a settlement agreement between the National Association of Realtors and home-seller plaintiffs modifying the very NAR guidelines that Plaintiffs here challenge.

1

*Third*, Plaintiffs lack antitrust standing to sue under both the Sherman Act and many state laws under *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983), which held that plaintiffs whose injuries are remote from an antitrust violation cannot seek relief under the Sherman Act. Other courts have recognized that home buyers are indirect purchasers who pay no commission at all, let alone any allegedly inflated commission. Courts have likewise recognized that the harm they allege—higher home prices because of inflated commissions—is too speculative and attenuated from the challenged conduct. Plaintiffs do not allege how commissions, rather than the various market factors that go into the price of any individual home, result in higher home prices. Finally, that home sellers are pursuing claims challenging precisely the same guidelines at issue here weighs heavily against finding antitrust standing for home buyers and greatly increases the risk of double recovery.

*Fourth*, Plaintiffs lack standing to pursue unjust enrichment claims in Illinois, Missouri, and Florida. Those states bar claims for damages by indirect purchasers like Plaintiffs and Plaintiffs cannot avoid that bar by repackaging their allegations of antitrust violations as an unjust enrichment claim.

## BACKGROUND

### A.    Home Sellers Typically Pay The Buyer Broker's Commission

Most Americans purchase and sell homes only a few times in their lives. Am. Compl. ¶ 1. Although prospective buyers can find homes themselves using public "websites, such as Zillow," *id.* ¶ 36, they still "often depend on brokers to assist them with the process," *id.* ¶ 2. Brokers use Multiple Listing Services ("MLSs") to list homes for sellers and to find homes for buyers. Am. Compl. ¶ 60. MLSs allow real estate brokers "to publish and share information about property listings in specified geographic areas." *Id*. MLSs typically are owned and operated by local or regional associations of brokers. *Id.*

2

During a typical real estate transaction, a homeowner or seller enters into a listing agreement with a seller-broker in which the seller agrees to pay the seller-broker in "exchange for marketing and facilitating the sale of the home." Am. Compl. ¶ 68. The listing agreement "specifies the total commission a home-seller will pay to the seller-broker." *Id.* ¶ 66. The agreement also often states that the seller-broker will pay compensation to any buyer-broker retained by the buyer and earmarks a portion of the total compensation amount to be paid to the buyer-broker. *Id.* ¶¶ 67-69. When seller-brokers list a home, they "typically" disclose the commission they are willing to offer the buyer. *Id.*

If a buyer uses a buyer-broker, the buyer enters into a contract with the broker that "typically" discloses that the buyer-agent will be compensated out of the total commission offered by the seller-broker. Am. Compl. ¶ 67. When the home is sold, the total commission amount is deducted from the proceeds the seller receives from the home sale and is typically apportioned by an escrow agent to the seller-broker and the buyer-broker according to the amounts set forth in the listing agreement. *Id.* ¶ 68. In this arrangement, the buyer does not pay for broker services, which are borne completely by the seller. *Id.* ¶ 69.

### B.    Plaintiffs Purchased Homes Using Buyer Agents Whom They Did Not Pay

Plaintiffs reside in and purchased homes in the following states: Arizona (Putt), Colorado (Lutz), Connecticut (Van Woerkon), Florida (Lutz, Bolton, Kim), Illinois (Ewald), Iowa (Clark), Maine (Adams), Maryland (Groves), Massachusetts (Bisbicos), Minnesota (Kullmann), Missouri (Hendry), Nevada (Mullis), New Mexico (Parsons), New York (Wohl), North Carolina (Davis, Braun, James), Oregon (Strine), South Carolina (Sayles), Tennessee (Batton), Virginia (Sannar), Washington D.C. (Shadle), West Virginia (Garret), Wisconsin (Boomsma). Am. Compl. ¶¶ 20-45. No Plaintiff paid their buyer-broker any compensation. *See id.*

3

Despite living in and having bought homes in only 22 states (including Washington D.C.) between 2018 and 2023, Plaintiffs bring claims under 34 states and seek to represent a nationwide class of buyers who "purchased in the United States residential real estate that was listed on a NAR MLS" from December 1, 1996 to present.  Am. Compl. ¶ 154.

### C.    Plaintiffs Bring This Lawsuit Against Hanna Holdings

In a copycat complaint of others filed in different jurisdictions by the same counsel, Plaintiffs allege that Defendant Hanna Holdings, Inc. participated in a conspiracy since at least 1996 to have home buyers pay "inflated buyer-agent commissions and inflated total commissions," in violation of the Sherman Act and various state antitrust and consumer protection laws.  Am. Compl. ¶¶ 132, 178, 184.  Though this is a suit against Hanna Holdings, the allegations contain little or nothing about Hanna Holdings or its supposed role in the purported conspiracy.  Hanna Holdings, Inc. is a family-owned real estate brokerage company that operates in only 13 states across the East Coast and Midwest.  Am. Compl. ¶ 46.  Only one Plaintiff—Scott Davis—is alleged to have any connection to Defendant Hanna Holdings.  Davis bought a home in North Carolina using a "buyer-agent broker" from Allen Tate Real Estate, LLC ("Allen Tate"), a partially owned subsidiary of Hanna Holdings.  *Id*. ¶ 20.

**ARGUMENT**

Nearly all of Plaintiffs' claims must be dismissed for lack of Article III, antitrust, and statutory standing or mootness.  These claims also fail for other reasons, as explained in Hanna Holdings' accompanying motion to dismiss for failure to state a claim, but the Court need not reach those arguments.  Article III standing "is a fundamental jurisdictional question" that "must be addressed before reaching the merits."  *AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 168 (3d Cir. 2001).  Likewise, when claims can be dismissed for lack of antitrust standing, courts "begin there."  *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 249 n.6

4

(3d Cir. 2022).

"On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing' the elements of standing." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Whether reviewing a motion to dismiss for lack standing, courts must "accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party," *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine*, 486 F.3d at 810), but "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements," *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016); *see also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011).

I.    **Plaintiffs Lack Article III Standing To Pursue State Law Claims For 13 States In Which They Did Not Reside Or Suffer Injury**

None of the named plaintiffs resides or purchased a home in California, Hawaii, Kansas, Michigan, Montana, Nebraska, New Hampshire, New Jersey, North Dakota, Pennsylvania, Rhode Island, Utah, or Vermont. Thus, no named Plaintiff has Article III standing to bring claims under the laws of those states. *See, e.g.*, *Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89, 108 (D.N.H. 2020) (dismissing claim under New Hampshire Consumer Protection Act for lack of standing where plaintiff, an Arizona citizen, had "not asserted that he received any alleged misrepresentations in New Hampshire or was injured by undisclosed information in the state").

As Hanna Holdings previously explained, *see* Dkt. 33-1 at 8-9, it does not matter that the ***proposed*** class is nationwide. "The requirements for standing do not change in the class action context": a named plaintiff must have Article III standing to maintain a claim on behalf of a proposed class. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017). Applying that well-settled requirement, courts in this circuit have repeatedly

dismissed state-law claims in putative class actions where no named plaintiff allegedly suffered "injuries in relation to the laws of [those] states." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009). Instead, "named plaintiffs may bring suit only under the laws of states in which they reside" or in which they suffered injury. *See In re Niaspan Antitrust Litigation*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 157 (concluding that named plaintiffs lacked standing "to bring claims under the laws of states where no named plaintiff is located … [or] purchased" the product at issue); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.,* 64 F. Supp. 3d 665, 692, 694 (E.D. Pa. 2014) (dismissing "claims brought under the laws of … thirty-two different states and territories" for lack of Article III standing because named plaintiffs "do not reside in and did not suffer a financial injury in those thirty-state states"), *on reconsideration in part*, 2015 WL 12910728 (E.D. Pa. Apr. 14, 2015).

The state-law claims that no named Plaintiff has Article III standing to raise must therefore be dismissed. And because Plaintiffs already had an opportunity to cure this defect after Hanna Holdings raised this same argument in its motion to dismiss the original complaint, dismissal should be with prejudice.

## II.   Plaintiffs' Sherman Act Claim Must Be Dismissed For Lack Of Article III Justiciability On Both Standing And Mootness Grounds

Plaintiffs bring only a claim for injunctive relief (not for damages) under the Sherman Act. Am. Compl. ¶ 173. But they lack Article III standing to seek injunctive relief because they do not allege they will buy another home and be harmed in the future. And even if Plaintiffs did have standing, their claim for injunctive relief would be moot because of a settlement modifying the NAR guidelines that they seek to enjoin. Their Sherman Act claim therefore must be dismissed.

*First*, Plaintiffs lack standing to pursue injunctive relief because they do not allege that they intend to buy another home let alone to use a broker if they do.  To establish Article III standing "[w]hen, as in this case, prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). As previously discussed, "[i]n the class action context, that requirement must be satisfied by at least one named plaintiff." *Id.*  "The threat of injury must be 'sufficiently real and immediate,' and, as a result of the immediacy requirement, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'" *Id.* (citation omitted). Here, Plaintiffs have not even attempted to satisfy this requirement.  They acknowledge that "[m]ost people purchase and sell homes only a few times in their lives," Am. Compl. ¶ 2, but do not allege that they intend to purchase a new home in the future, *id.* ¶ 20.  Whether they buy another home or not "will be their choice, and what that choice may be is a matter of pure speculation at this point." *McNair*, 672 F.3d 213 at 225.  Plaintiffs therefore have not alleged that they face "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969); *see also Cargill, Inc. v. Monfort of Col., Inc.*, 479 U.S. 104, 113 (1986).  Plaintiffs therefore do not have standing to seek injunctive relief.

*Second*, Plaintiffs' claim for injunctive relief is nonetheless moot because of a settlement between NAR and a nationwide class of home sellers eliminating the same guidelines that Plaintiffs challenge.  Plaintiffs seek "a permanent injunction to permanently enjoin and restrain Defendant from establishing the same or similar rules, policies, or practices as those challenged in this action in the future." Am. Compl. at 54.  Those are NAR guidelines governing buyer-

broker commissions. *See Id.* ¶ 79. But NAR has already agreed in a settlement agreement to eliminate precisely those guidelines. *See* Corrected Settlement Agreement at 27-31, *Sitzer v. NAR*, No. 4:19-cv-00332 (W.D. Mo. Apr. 19, 2024), Dkt. No. 1458-1 at Ex. A (requiring NAR to eliminate and prohibit any requirement that listing brokers or sellers must make offers of compensation to buyer brokers or other buyer representatives, among other requirements); *see also* Gringer Decl. Ex. A.[1] That agreement moots this case. "[A] suit becomes moot[] 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). That is the case here because, in light of the settlement, "the allegedly wrongful behavior could not reasonably be expected to recur." *Clark v. Governor of N.J.*, 53 F.4th 769, 775 (3d Cir. 2022); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 97 (2013) (holding a case moot in light of a "covenant promising" no future violations of the type alleged). Mootness is an independent basis to dismiss Plaintiffs' Sherman Act claim. *See Already, LLC*, 568 U.S. at 91 (a case that is moot is "no longer a 'Case' or 'Controversy' for purposes of Article III").

## III.    Plaintiffs Lack Antitrust Standing To Bring Any Antitrust Claim

### A.    Plaintiffs Lack Antitrust Standing To Bring Their Sherman Act Claim Under *AGC*

Plaintiffs' claim under the Sherman Act also should be dismissed for lack of antitrust standing. "While the name echoes the familiar formulation of Article III, the judicially imposed requirement of antitrust standing is far more limiting." *Host Int'l, Inc.*, 32 F.4th at 249. To determine whether a plaintiff has antitrust standing, courts must "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Associated Gen.*

---

[1] The Court can take judicial notice of this court filing. *See Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) ("Courts may take judicial notice of public records, including 'publicly available records and transcripts from judicial proceedings.'").

*Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 535 (1983);

*see also Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 341-342 (3d Cir. 2018).  Here,

Plaintiffs allege that Hanna Holdings participated in a conspiracy that resulted in inflated buyer-

broker commissions that they did not pay.  Their alleged injury—higher home prices passing

along the alleged overcharge on buyer-broker services—is far too speculative and attenuated

from the alleged antitrust violation to establish antitrust standing.

Nearly all the factors the Supreme Court has identified as relevant to whether a "plaintiff

has suffered an injury which bears a causal relation to an alleged antitrust violation" are present

here.  *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-1166 (3d Cir. 1993)

(citing *AGC*, 459 U.S. at 545).  These factors are:

> (1) the causal connection between the antitrust violation and the harm to the
> plaintiff and the intent by the defendant to cause that harm, with neither factor alone
> conferring standing; (2) whether the plaintiff's alleged injury is of the type for
> which the antitrust laws were intended to provide redress; (3) the directness of the
> injury, which addresses the concerns that liberal application of standing principles
> might produce speculative claims; (4) the existence of more direct victims of the
> alleged antitrust violations; and (5) the potential for duplicative recovery or
> complex apportionment of damages.

*Id.*  The first, third, fourth, and fifth factors all support lack of antitrust standing for both the

injunctive relief Plaintiffs seek under federal and state law and the damages they seek under state

law.

Beginning with the fourth and fifth factors, the Third Circuit has explained that these two

factors "in the *AGC* framework … incorporate[] … the principles of *Illinois Brick*," *McCarthy v.*

*Recordex Serv., Inc.*, 80 F.3d 842, 850-851 (3d Cir. 1996), which held that indirect purchasers

cannot sue for antitrust damages, *see Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

Plaintiffs implicitly acknowledge that they are "indirect purchasers" of the allegedly overcharged

good—buyer-broker services—because they are not pursuing damages.  They could not credibly

argue otherwise.  Their own theory of the case is that that seller brokers, not buyers, directly pay the buyer-broker commission but that home buyers indirectly pay the buyer-broker commission in the form of higher home prices and "reduced quality of buyer-agent services."  Am. Compl. ¶ 69; *see also, e.g.*, *id.* ¶ 67 ("The buyer-agent is typically compensated with a portion of the total commission paid to the seller-broker" by the seller); *id.* ¶ 92 (buyer-broker's "compensation [is] offered to them by home sellers").  Courts have held in cases raising nearly identical claims that home buyers are indirect purchasers that lack standing to pursue antitrust damages.  Order at 22, *Gibson v. NAR*, No. 4:23-cv-00788 (W.D. Mo. Nov. 4, 2024), Dkt. 530 (explaining that buyers are not direct purchasers under federal antitrust law); *see also* Gringer Decl. Ex. B; *Leeder v. NAR*, 601 F. Supp. 3d 301, 311 (N.D. Ill. 2022) ("[H]omebuyers are indirect purchasers" who cannot seek Sherman Act damages); *Batton v. NAR* (*Batton I*), 2024 WL 689989, at *2 (N.D. Ill. Feb. 20, 2024) (holding that homebuyers are indirect purchasers and therefore cannot seek damages or injunctive relief).  That same principle applies through the *AGC* factors to Plaintiffs' claim for injunctive relief.

Moreover, the potential for duplicative recovery, which factor five addresses, is very real in this case.  As a court just recognized in approving settlements between a nationwide class of home sellers and brokerages, most home buyers are also home sellers: "few people sell a home without first buying it," and "most home sellers then buy a different home with the proceeds because they need somewhere to live."  Order at 35-36, *Gibson*, No. 4:34-cv-00788 (W.D. Mo. Nov. 4, 2024), Dkt. 530; *see also* Gringer Decl. Ex. B.  The court therefore declined to carve "indirect purchaser buyer claims from the releases," explaining that the settling defendants "quite reasonably balked at paying large amounts in settlement only to have the same people they just paid sue them again for the same alleged antitrust discovery."  *Id.*

The first and third factors, which concern the relationship between the alleged injury and the challenged conduct, separately demonstrate that Plaintiffs lack antitrust standing because Plaintiffs' alleged injury is too remote and speculative.  Plaintiffs' theory is that Hanna Holdings conspired with NAR and other real estate brokerages to adopt a guideline requiring listings on NAR-affiliated multiple listing services to offer compensation to buyer-brokers.  While this guideline does not require that listings offer a particular commission, it allegedly "enables" brokers to maintain artificially high buyer-broker commissions.  As Plaintiffs acknowledge, home buyers do not directly pay this allegedly inflated buyer-broker commission.  Instead, Plaintiffs claim injury based on speculation that inflated buyer-broker commissions "in turn" inflate home prices through "steering."  Am. Compl. ¶ 12.  The relationship between the alleged antitrust violation and the alleged harm to Plaintiffs in this case is thus indirect, turning on the independent decisions of both individual real estate brokers and individual home sellers.  Accordingly, the first "directness factor," which the Third Circuit has described as "all-important," weighs greatly in Hanna Holdings' favor.  *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d at 1168.

Plaintiffs' theory of injury is also speculative, weighing against standing under the third factor:  The price of any individual home depends on a variety of market and personal factors, making it complex to determine how the price was impacted, if at all, by the commission rate paid by the seller broker to the buyer broker.  "[T]he Supreme Court has consistently emphasized the difficulty in calculating how market forces work on the different purchasers and sellers in an economic system," *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 93 (3d Cir. 2011), and that is no less true of the real estate market.  There are certainly no facts alleged in the Amended

Complaint to support a direct relationship nor any suggestion of how such a relationship could ever be established.

Moreover, the existence of lawsuits by home sellers challenging the same NAR guidelines and seeking the same injunctive relief weighs heavily toward denying antitrust standing, as other courts have recognized in dismissing substantially similar homebuyer claims. *See Leeder*, 601 F. Supp. 3d at 314; *Batton I*, 2024 WL 689989, at \*10.  The Supreme Court held in *AGC* that the "existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party" to seek an injunction.  *AGC*, 459 U.S. at 542.  Here, home seller plaintiffs—a class of persons alleged to be more directly injured—are not only theoretically motivated and more efficient enforcers of the antitrust laws, but are *in fact* challenging the same NAR guidelines based on the same alleged conspiracy.  *See, e.g., Gibson v. NAR*, No. 4:23-cv-00788 (W.D. Mo.); *1925 Hooper LLC v. NAR*, No. 1:23-cv-05392 (N.D. Ga.); *QJ Team, LLC v. Tex. Ass'n of Realtors*, No. 4:34-cv-01013 (E.D. Tex.); *Martin v. Tex. Ass'n of Realtors, Inc.*, No. 4:23-cv-01104 (E.D. Tex.); *Burton v. NAR*, No. 7:23-cv-05666 (D.S.C.); and *Moehrl v. NAR*, No. 1:19-cv-01610 (N.D. Ill.); *see also* Order at 46-47, *Gibson*, No. 4:34-cv-00788 (W.D. Mo. Nov. 4, 2024), Dkt. 530 (explaining that "the buyer claims arise from the same factual predicate as the seller claims"); Gringer Decl. Ex. B.

For that exact reason, courts have dismissed claims brought by home buyers for lack of standing.  In *Leeder*, the court explained that home sellers "are necessarily more directly injured by [d]efendants' alleged antitrust violations" than home buyers and were "in fact[] vindicating the public interest in antitrust enforcement as they are actively challenge the same NAR rules"— including by "requesting the exact injunction" that the home buyer plaintiff was requesting.  601

F. Supp. 3d at 313.  Thus, the court concluded, denying the home buyer "standing to seek injunctive relief w[ould] not 'leave a significant antitrust violation undetected or unremedied,'" which meant that the "directness-of-injury factor [of *AGC*] weigh[ed] particularly heavily toward denying antitrust standing."  *Id.* (cleaned up).  Similarly, in *Batton I*, the court dismissed home buyers' claim for injunctive relief because "home seller plaintiffs are better suited to seek the injunctive relief that [p]laintiffs s[ought]."  2024 WL 689989, at *10.  The court further explained that home sellers are best situated to seek injunctive relief because buyers are also sellers: to the extent that any of the putative members of the home buyer class would even reenter the market for residential real estate (which was unlikely), they would "simultaneously be looking to sell their current homes."  *Id.*

**B.**    **Plaintiffs Lack Antitrust Standing To Bring Their State Antitrust Claims, To Which *AGC* Or A Similar Test Applies**

Plaintiffs' state antitrust claims also are barred in states that follow *AGC*'s directness requirement for antitrust standing.  Federal courts "look[] to the treatment of standing under the relevant state antitrust statutes" to determine whether "a diversity plaintiff possesses federal prudential standing to bring a claim under a state antitrust statute."  *D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 494-495 (E.D. Pa. 2006) (collecting cases).  That requires looking at the text of the relevant statute and judicial decisions addressing who may sue under those statutes.  *See id.* at 496.  As a threshold matter, if a state has a harmonization provision that "says that a state's antitrust laws should be read in harmony with federal antitrust laws," courts will follow that provision and apply *AGC* absent state authority to the contrary.  *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *3-5 (N.D. Ill. June 29, 2015).  Here, Arizona, California, Hawaii, Illinois, Iowa, Kansas, Maryland, Michigan, Maine, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North

13

Dakota, Oregon, Rhode Island, Utah, Vermont, Washington D.C., West Virginia, and Wisconsin all generally follow federal law when construing their state antitrust statutes, and courts in those states either have held that *AGC* applies or not held otherwise.  This Court therefore should apply *AGC* to dismiss these state law antitrust claims for lack of antitrust standing.  Because the Connecticut Supreme Court has applied factors like *AGC*'s in assessing antitrust standing, the Court should also dismiss that state antitrust claim for lack of standing.  Finally, although Minnesota does not apply *AGC*, Plaintiffs likewise lack antitrust standing under Minnesota's standard.

Arizona.  Arizona has a statutory harmonization provision.  *See* Ariz. Rev. Stat. Ann. § 44–1412 ("[I]n construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes.").  Because there is no contrary Arizona case law indicating that Arizona courts would not follow *AGC*, federal courts have held that Arizona courts would follow *AGC*.  *See, e.g.*, *Carefirst of Maryland, Inc. v. Johnson & Johnson*, 2024 WL 3858249, at *19 (E.D. Va. Aug. 16, 2024); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007).

California.  A "long line of California cases" has recognized that federal cases interpreting the Sherman Act are applicable to California's Cartwright Act because "both statutes have their roots in the common law."  *Marin Cty. Bd. of Realtors, Inc. v. Palsson*, 549 P.2d 833, 835 (Cal. 1976).  Indeed, the California Supreme Court has explained that California's *Illinois Brick* repealer statute was necessary precisely because federal antitrust cases are otherwise treated as authoritative.  *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1082 n.18 (Cal. 2010).  The absence of any statute repealing *AGC* implies that California follows federal law in that respect.  Moreover, a California appellate court has endorsed applying *AGC* in interpreting California's

antitrust laws, *see Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 (1995) (applying *AGC*), as have federal courts, *see, e.g.*, *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 120 (2d Cir. 2021); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987-991 (9th Cir. 2000); *Dairy Farmers of Am.*, 2015 WL 3988488, at *7-8.

Connecticut.  The Connecticut Supreme Court has applied factors that parallel the *AGC* test, holding that "a plaintiff must adequately plead both that it has suffered an antitrust injury and that it is an efficient enforcer of the antitrust act."  *Tremont Pub. Advisors, LLC v. Conn. Res. Recovery Auth.*, 217 A.3d 953, 966 (Conn. 2019).  For all the reasons Plaintiffs lack standing under *AGC*, they lack standing under Connecticut's test, too.

Hawaii.  Hawaii's antitrust statute has a harmonization provision.  *See* Haw. Rev. Stat. § 480-3 ("This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes.").  While no court in Hawaii has expressly adopted the *AGC* factors, the Hawaii Supreme Court has held that antitrust standing requires a direct injury.  *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 148 P.3d 1179, 1206 (Haw. 2006).  Accordingly, federal courts have found that the Hawaii courts would apply *AGC*.  *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 545 (N.D. Ill. 2019); *In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 3d 828, 841 n.5 (D. Minn. 2023).

Illinois.  The Illinois Antitrust Act has a harmonization provision.  *See* 740 Comp. Ill. Stat. § 10/11 ("When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act.").  Given the absence of any Illinois case law indicating that *AGC* does not apply, federal courts have held that it does.  *See, e.g.*, *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1064 (7th Cir. 2019).  Plaintiffs also lack standing

under the Illinois Antitrust Act because that Act permits only the state's Attorney General to bring a class action on behalf of indirect purchasers. 740 Ill. Comp. Stat. § 10/7(2); *see also In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 834 (E.D. Pa. 2019) (noting the "prevailing view" that "the Illinois Antitrust Act prohibits indirect purchaser class actions").

Iowa.  Iowa has a statutory harmonization provision.  *See* Iowa Code Ann. § 553.2 ("This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter.  This construction … shall be made to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices.").  The Iowa Supreme Court has applied *AGC* to Iowa antitrust claims.  *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198-199 (Iowa 2007).

Kansas.  Kansas has a statutory harmonization provision.  *See* Kan. Stat. Ann. § 50–163(b) ("[T]he Kansas restraint of trade act shall be construed in harmony with ruling judicial interpretations of federal antitrust law by the United States [S]upreme [C]ourt.").  A Kansas trial court and several federal courts have held that *AGC* applies to Kansas antitrust claims.  *See Wrobel v. Avery Dennison Corp.*, 2006 WL 7130617, at *4 (Kan. Dist. Ct. Feb. 1, 2006); *Carefirst*, 2024 WL 3858249, at *19 n.23; *In re Dairy Farmers of Am.*, 2015 WL 3988488, at *8-9 (collecting federal cases).

Maryland.  Maryland's antitrust law has a harmonization provision.  *See* Md. Code Ann. Com. Law § 11-202(a)(1)(2) ("It is the intent of the General Assembly that, in construing this subtitle, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters.").  No Maryland court has held that *AGC* does not apply to the State's antitrust statute, and at least one federal court has held that it does.  *See Carefirst*, 2024 WL 3858249, at *19.

16

Michigan.  Michigan has a statutory harmonization provision.  *See* Mich. Comp. Laws § 445.784(2) ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes.").  A Michigan circuit court has applied *AGC* to a claim under Michigan's Antitrust Reform Act, *see Stark v. Visa U.S.A. Inc.*, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23, 2004), as have several federal courts, *see In re Dairy Farmers of Am.*, 2015 WL 3988488, at *9-10 (collecting federal cases).

Maine.  Maine's antitrust statute "parallel[s] the Sherman Act."  *Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 998 F.2d 1073, 1081 (1st Cir. 1993) (citing Me. Rev. Stat. Ann. Tit. 10, §§ 1101 et seq.); *see also In re Dealer*, 362 F. Supp. 3d at 542.  One Maine trial court has applied *AGC* to a Maine antitrust claim, *Knowles v. Visa U.S.A., Inc.*, 2004 WL 2475284, at *6 (Me. Super. Oct. 20, 2004), as has a federal court, *In re Dealer*, 362 F. Supp. 3d at 542.

Minnesota.  Minnesota does not follow *AGC* but the state Supreme Court has held that "[s]tanding under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law."  *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 631 (Minn. 2007).  The court explained that plaintiffs who "did not purchase, directly or indirectly," a product or service with an alleged overcharge would "most likely" have an injury "too remote and speculative to afford standing."  *Id.* at 632.  Because buyers never purchase buyer-broker services at all (unlike, for example, the end user of a product), they lack antitrust standing in Minnesota.

Nebraska.  Nebraska has a statutory harmonization provision.  *See* Neb. Rev. Stat. Ann. § 59-829 ("[T]he courts of this state in construing such sections or chapter shall follow the construction given to the federal law by the federal courts.").  The Supreme Court of Nebraska

has applied *AGC* to claims under the state's antitrust statute.  *Kanne v. Visa U.S.A. Inc.*, 723

N.W.2d 293, 300 (Neb. 2006).

    <u>Nevada</u>.  The Nevada Supreme Court has expressly adopted the *AGC* factors.  *See*

*Nevada Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*, 423 P.3d 605, 607 (Nev. 2018).

    <u>New Hampshire</u>.  New Hampshire has a statutory harmonization provision.  *See* N.H.

Rev. Stat. Ann. § 356:14 ("In any action or prosecution under this chapter, the courts may be

guided by interpretations of the United States' antitrust laws.").  As a result, federal courts have

applied federal law antitrust standing requirements—including *AGC*—to claims brought under

the state's antitrust law.  *See, e.g.*, *Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 785

(D.N.H. 1994); *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *10 (E.D.

Mich. Apr. 9, 2013); *Carefirst*, 2024 WL 3858249, at *19 n.23; *In re Dealer*, 362 F. Supp. 3d at

545; *In re Cattle & Beef*, 687 F. Supp. 3d at 841 n.5.

    <u>New Mexico</u>.  New Mexico has a statutory harmonization provision.  N.M. Stat. Ann.

§ 57-1-15 ("Unless otherwise provided in the Antitrust Act, the Antitrust Act shall be construed

in harmony with judicial interpretations of the federal antitrust laws.  This construction shall be

made to achieve uniform application of the state and federal laws prohibiting restraints of trade

and monopolistic practices.").  A New Mexico appellate court has concluded that *AGC* applies to

claims brought under the New Mexico Antitrust Act.  *See Nass-Romero v. Visa U.S.A. Inc.*, 279

P.3d 772, 776 (N.M. Ct. App. 2012).

    <u>New York</u>.  The New York Court of Appeals has held that New York courts generally

construe New York's antitrust statute, the Donnelly Act, in harmony with federal antitrust law.

*See Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007).  New York's Appellate

Division has affirmed lower courts' application of *AGC* to indirect-purchaser claims under the

Donelly Act on multiple occasions. *See Ho v. Visa USA, Inc.*, 793 N.Y.S.2d 8, 8-9 (N.Y. App. Div. 2005); *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d 8, 12 (N.Y. App. Div. 2007). Federal courts, including in New York, have followed suit. *See In re Dairy Farmers of Am.*, 2015 WL 3988488, at *12-14; *Contant v. Bank of Am. Corp.*, 2018 WL 1353290, at *4-5 (S.D.N.Y. Mar. 15, 2018).

North Carolina. North Carolina courts generally interpret North Carolina's antitrust statute in harmony with federal antitrust law. *See Madison Cablevision, Inc. v. City of Morganton*, 386 S.E.2d 200, 213 (N.C. 1989) (citing *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 520 (N.C. 1973)). In a thorough and well-reasoned opinion, a North Carolina Superior Court has held that *AGC* applies to claims under the North Carolina Antitrust Act and ultimately found that indirect purchasers lacked standing under the *AGC* factors. *Crouch v. Crompton Corp.*, 2004 WL 2414027, at *2 (N.C. Super. Oct. 28, 2004); *see also Dairy Farmers of Am.*, 2015 WL 3988488, at *17 (describing *Crouch* as "persuasive").

North Dakota. A state court in North Dakota has relied on *AGC* to dismiss a claim under the state's antitrust statute for lack of standing, explaining that the plaintiffs' "alleged injury [was] simply too remote." *Beckler v. Visa U.S.A., Inc.*, 2004 WL 2115144, at *3 (N.D. Dist. Aug. 23, 2004) (citing *AGC*, 459 U.S. 519); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d at 1094 (describing *Beckler* as "implying reliance on *AGC* factors in determining lack of standing").

Oregon. Oregon has a harmonization statute. *See* Or. Rev. Stat. § 646.715(2) ("The decisions of federal courts in construction of federal law relating to the same subject shall be persuasive authority in the construction of Or. Rev. Stat. 646.705 to 646.805 and 646.990."). No Oregon court has held that *AGC* does not apply. Federal courts accordingly have applied *AGC* to

Oregon antitrust claims. *See, e.g.*, *In re Interior Molded Doors Antitrust Litig.*, 2019 WL 4478734, at *16 (E.D. Va. Sept. 18, 2019).

Rhode Island. Rhode Island's antitrust statute has a harmonization provision. *See* R.I. Gen. Laws Ann. § 6-36-2(b) ("This chapter shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable."). No Rhode Island court has held that *AGC* does not apply. Accordingly, federal courts have found that Rhode Island courts would apply *AGC*. *See Oliver v. Am. Express Co.*, 2021 WL 386749, at *4 (E.D.N.Y. Feb. 1, 2021); *In re Dealer*, 362 F. Supp.3d at 545; *In re Cattle & Beef*, 687 F. Supp. 3d at 841 n.5; *Carefirst*, 2024 WL 3858249, at *19.

Utah. Utah's antitrust statute has a harmonization provision. *See* Utah Code Ann. § 76-10-3118 ("The Legislature intends that the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes."). Because no Utah court has held that *AGC* does not apply, federal courts have found that the Utah courts would apply *AGC*. *See In re Dealer*, 362 F. Supp.3d at 545; *In re Cattle & Beef*, 687 F. Supp. 3d at 841 n.5; *Carefirst*, 2024 WL 3858249, at *19 n.23; *Supreme Auto Transp. LLC v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1039 (N.D. Ill. 2017).

Vermont. Vermont has a statutory harmonization provision. *See* Vt. Stat. Ann. tit. 9, § 2453a(c) ("It is the intent of the General Assembly that in construing this section and subsection 2451a(h) of this title, the courts of this State shall be guided by the construction of federal antitrust law and the Sherman Act, as amended, as interpreted by the courts of the United States."). At least one Vermont court has held that *AGC* applies to claims under Vermont's antitrust law. *See Fucile v. Visa U.S.A., Inc.*, 2004 WL 3030037, at *3 (Vt. Super. Ct. Dec. 27,

2004).  Federal courts have followed suit.  *See Carefirst*, 2024 WL 3858249, at *19 n.3; *In re*

*Dealer*, 362 F. Supp. 3d at 544; *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 845 (E.D.

Mich. 2018).

Washington D.C.  The District of Columbia has a statutory harmonization provision.  *See*

D.C. Code Ann. § 28-4515 ("It is the intent of the Council of the District of Columbia that in

construing this chapter, a court of competent jurisdiction may use as a guide interpretations given

by federal courts to comparable antitrust statutes.").  At least one court in the District of

Columbia has applied *AGC* to a claim under D.C.'s antitrust statute, *Peterson v. Visa U.S.A.,*

*Inc.*, 2005 WL 1403761, at *5 (D.C. Super. Ct. Apr. 22, 2005), as have several federal courts, *see*

*In re Dealer*, 362 F. Supp. 3d at 541-542; *Carefirst*, 2024 WL 3858249, at *19 n.23; *In re*

*Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *10.

West Virginia.  West Virginia has a statutory harmonization provision.  *See* W. Va. Code

Ann. § 47-18-16 ("This article shall be construed liberally and in harmony with ruling judicial

interpretations of comparable federal antitrust statutes.").  No state court has indicated that *AGC*

would not apply to claims under West Virginia's antitrust statute, and at least one federal court

has held that it does apply.  *Carefirst*, 2024 WL 3858249, at *19.

Wisconsin.  Courts generally have looked to federal case law for guidance in interpreting

Wisconsin antitrust law.  *See Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*, 275 F.

Supp. 3d 957, 968-969 (W.D. Wis. 2017) (noting that "Wisconsin courts traditionally look to

federal law to interpret substantive violations of the Wisconsin antitrust statutes").  Moreover,

one trial court in Wisconsin has held that Wisconsin's higher courts would apply *AGC*.  *Strang v.*

*Visa U.S.A., Inc.*, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005).

## IV.    Plaintiffs Lack Standing To Bring Numerous Consumer Protection Claims

Plaintiffs lack standing to bring numerous of their consumer protection claims.

21

*First*, all Plaintiffs other than Davis lack standing to bring their claims under the laws of Arizona, Connecticut, Massachusetts, North Carolina, South Carolina, and Washington D.C. because those states require at least a business relationship if not privity between the plaintiff and defendant. *See Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 453-454 (Ariz. Ct. App. 2012) (affirming dismissal of claim because, inter alia, plaintiff did not allege that the conduct "related to a sale between the parties"); *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 232 (D. Conn. 2014) ("[S]tanding under CUTPA requires that the plaintiff have 'some sort of business relationship' with the defendant business 'such that he suffers injury as either a consumer or competitor of the defendant or as some other businessperson affected by its unfair or deceptive acts.'"); *Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (dismissing CPPA claim because plaintiff "identified no goods or services she purchased or received from [defendants]"); *Rafferty v. Merck & Co.*, 92 N.E.3d 1205, 1223 (Mass. 2018) (affirming dismissal because plaintiff failed to allege that he purchased the injury-causing product from defendant); *Town of Belhaven v. Pantego Creek, LLC*, 793 S.E.2d 711, 720 (N.C. Ct. App. 2016) (no standing where there was "no business relationship" between parties and plaintiff was not defendant's customer); *Reynolds v. Ryland Grp., Inc.*, 531 S.E.2d 917, 919 (S.C. 2000) (holding that consumer protection law requires privity of contract between parties).  Because no Plaintiff other than Davis had any business relationship with Hanna Holdings or a Hanna Holdings affiliate, and Davis only has standing to raise a claim in North Carolina, the claims under Arizona, Connecticut, Massachusetts, South Carolina, and Washington D.C. law must be dismissed entirely and the claim under North Carolina law must be dismissed as to all Plaintiffs but Davis.

*Second*, Plaintiffs lack standing to pursue consumer protection claims in Missouri and New York because their injuries are too indirect.  Missouri prohibits indirect purchasers from using a consumer-protection claim as an "end-run around the state's prohibition of antitrust claims by indirect purchasers."  *In re Suboxone*, 64 F. Supp. 3d at 702.  And New York courts have dismissed claims by indirect purchasers as "too remote" to support a consumer protection claim.  *See State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d at 12; *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009) (It is "clear that allegations of indirect … injuries will not suffice.").

## V.     Plaintiffs Lack Standing To Bring Unjust Enrichment Claims As Indirect Purchasers In Illinois, Missouri, and Florida

In those states that have adopted *Illinois Brick*—Illinois, Missouri, and Florida—"the vast majority of courts have held that indirect purchasers like plaintiffs may not bring state law claims for unjust enrichment if they otherwise would be barred from bringing a claim under that state's antitrust and consumer-protection statutes, absent a showing that the common law of the state in question expressly allows for such recovery."  *Niaspan*, 42 F. Supp. 3d at 763 (collecting cases).  That is because "[a]llowing indirect purchasers to recover and recoup a benefit from the defendant under an unjust enrichment theory would circumvent the policy choice of *Illinois Brick*."  *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010); *see also Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 425 (E.D. Pa. 2010).  As Hanna Holdings separately explains in its motion to dismiss for failure to state a claim, Plaintiffs' failure to specify the states in which they even are pursuing unjust enrichment claims requires dismissal of that count.  But to the extent Plaintiffs are pursuing claims in Illinois, Missouri, and Florida, they must be dismissed for lack of standing.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the following claims be dismissed for failure to plausibly allege standing: Sherman Act claim, Arizona antitrust and consumer protection claims, California antitrust and consumer protection claims, Connecticut antitrust and consumer protection claims, Florida unjust enrichment claim, Hawaii antitrust claim, Illinois antitrust and unjust enrichment claims, Iowa antirust claim, Kansas antitrust claim, Maine antitrust claim, Maryland antitrust claim, Massachusetts consumer protection claim, Michigan antitrust and consumer protection claims, Minnesota antitrust claim, Missouri consumer protection and unjust enrichment claims, Montana consumer protection claim, Nebraska antitrust and consumer protection claims, Nevada antitrust claim, New Hampshire antitrust and consumer protection claims, New Jersey consumer protection claim, New Mexico antitrust claim, New York antitrust and consumer protection claims, North Carolina antitrust claim, North Carolina consumer protection claim as to all Plaintiffs but Davis, North Dakota antitrust claim, Oregon antitrust claim, Pennsylvania consumer protection claim, Rhode Island antitrust and consumer protection claims, South Carolina consumer protection claim, Utah antitrust claim, Vermont antitrust claim, Washington, D.C. antitrust and consumer protection claims, West Virginia antitrust claim, and Wisconsin antitrust claim. As separately explained in Hanna Holdings' motion to dismiss for failure to state a claim, Plaintiffs separately fail to plausibly allege each one of these claims as to each Plaintiff and also fail to plausibly allege the remaining unjust enrichment claims and claims under the consumer protection statutes of Colorado, Florida, Iowa, Oregon, Virginia, and Wisconsin.

Respectfully submitted,
*/s/ David Z. Gringer*
David Z. Gringer*
Emily Barnet*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.gringer@wilmerhale.com
emily.barnet@wilmerhale.com

Seth P. Waxman*
Karin Dryhurst*
Claire M. Bergeron*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com
karin.dryhurst@wilmerhale.com
claire.bergeron@wilmerhale.com

Eric G. Soller
Pa. I.D. No. 65560
William Pietragallo II
Pa. I.D. No. 16413
Quintin DiLucente
Pa. I.D. No. 330648
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Fl.
Pittsburgh, PA 15219
(412) 263-1836
EGS@Pietragallo.com
WP@Pietragallo.com
QD@Pietragallo.com

*Attorneys for Hanna Holdings, Inc.*

*\*Admitted pro hac vice*

25

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 6, 2024, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record registered with the CM/ECF system.

*/s/ David Z. Gringer*
David Z. Gringer