**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTT DAVIS, NIALL ADAMS, MYA BATTON, THEODORE BISBICOS, AARON BOLTON, JASON BOOMSMA, THOMAS BRAUN, SABRINA CLARK, RYAN EISNER, STEVEN EWALD, JOHN GARRETT, BRENNON GROVES, DARIN HENDRY, ANNA JAMES, DO YEON IRENE KIM, JAMES LUTZ, JORDAN KULLMANN, JAMES MULLIS, DANIEL PARSONS, JOSHUA PUTT, JOHN SANNAR, ROBERT SAYLES, BEN SHADLE, BRENT STRINE, CHRISTINE VAN WOERKON, AND SHERRIE WOHL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>HANNA HOLDINGS, INC.,<br><br>Defendant. | Case No. 2:24-cv-2374-WB<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF HANNA HOLDINGS'**
**<u>MOTION TO DISMISS FOR LACK OF STANDING AND MOOTNESS</u>**

## TABLE OF CLAIMS

| Claim | Basis for Dismissal |
| --- | --- |
| Sherman Act claim | • Lack of Article III standing to seek injunctive relief; and<br>• Lack of antitrust standing under *AGC* |
| Arizona antitrust claim | • Lack of antitrust standing under *AGC* |
| Arizona consumer protection claim | • Lack of standing because no Arizona-based named Plaintiff has a commercial relationship with Hanna Holdings |
| California antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in California; and<br>• Lack of antitrust standing under *AGC* |
| California consumer protection claim | • Lack of Article III standing |
| Connecticut antitrust claim | • Lack of antitrust standing under Connecticut's *AGC*-like test |
| Connecticut consumer protection claim | • Lack of standing because no Connecticut-based named Plaintiff has a commercial relationship with Hanna Holdings |
| Florida unjust enrichment claim | • Lack of standing because of *Illinois Brick* |
| Hawaii antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Hawaii; and<br>• Lack of antitrust standing under *AGC* |
| Illinois antitrust claim | • Lack of antitrust standing under *AGC* |
| Illinois unjust enrichment claim | • Lack of standing because of *Illinois Brick* |
| Iowa antitrust claim | • Lack of antitrust standing under *AGC* |
| Kansas antitrust claim | • Lack of Article III standing<br>• Lack of antitrust standing under *AGC* |
| Maine antitrust claim | • Lack of antitrust standing under *AGC* |
| Maryland antitrust claim | • Lack of antitrust standing under *AGC* |
| Massachusetts consumer protection claim | • Lack of standing because no Massachusetts-based named Plaintiff has a commercial relationship with Hanna Holdings |
| Michigan antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Michigan; and<br>• Lack of antitrust standing under *AGC* |
| Michigan consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Michigan |
| Minnesota antitrust claim | • Lack of antitrust standing under Minnesota antitrust standing doctrine |

| | |
|---|---|
| Missouri consumer protection claim | • Lack of standing because Plaintiffs' claims are too indirect |
| Missouri unjust enrichment claim | • Lack of standing because Plaintiffs' claims are too indirect |
| Montana consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Montana |
| Nebraska antitrust law claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Nebraska; and<br>• Lack of antitrust standing under *AGC* |
| Nebraska consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Nebraska |
| Nevada antitrust claim | • Lack of antitrust standing under *AGC* |
| New Hampshire antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in New Hampshire; and<br>• Lack of antitrust standing under *AGC* |
| New Hampshire consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in New Hampshire |
| New Jersey consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in New Jersey |
| New Mexico antitrust claim | • Lack of antitrust standing under *AGC* |
| New York antitrust claim | • Lack of antitrust standing under *AGC* |
| New York consumer protection claim | • Lack of standing because of *Illinois Brick* |
| North Carolina antitrust claim | • Lack of antitrust standing under *AGC* |
| North Carolina consumer protection claim | • Lack of standing as to all named Plaintiffs but Davis because no North Carolina-based named Plaintiff has commercial relationship with Hanna Holdings |
| North Dakota antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in North Dakota; and<br>• Lack of antitrust standing under *AGC* |
| Oregon antitrust claim | • Lack of antitrust standing under *AGC* |
| Pennsylvania consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Pennsylvania |
| Rhode Island antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Rhode Island; and<br>• Lack of antitrust standing under *AGC* |

| | |
|---|---|
| Rhode Island consumer protection claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Rhode Island |
| South Carolina consumer protection claim | • Lack of standing because no South Carolina-based named Plaintiff has a commercial relationship with Hanna Holdings |
| Utah antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Utah; and<br>• Lack of antitrust standing under *AGC* |
| Vermont antitrust claim | • Lack of Article III standing because no named Plaintiff lives or purchased a home in Vermont; and<br>• Lack of antitrust standing under *AGC* |
| Washington, D.C. antitrust claim | • Lack of antitrust standing under *AGC* |
| Washington, D.C. consumer protection claim | • Lack of standing because no D.C.-based named Plaintiff has a commercial relationship with Hanna Holdings |
| West Virginia antitrust claim | • Lack of antitrust standing under *AGC* |
| Wisconsin antitrust claim | • Lack of antitrust standing under *AGC* |

## INTRODUCTION

Plaintiffs' opposition confirms that they cannot satisfy the standing requirements for their Sherman Act claim and most of their state law claims. *First*, contrary to Plaintiffs, Article III requires plaintiffs to establish jurisdiction for each claim and does not permit them to rely on the purported injuries of unnamed class members. The Third Circuit has not held otherwise. And because a plaintiff must satisfy standing from the moment the complaint is filed, Plaintiffs cannot postpone this standing inquiry until class certification as they seek to do.

*Second*, Plaintiffs concede that they fail to allege an imminent risk of injury by acknowledging none presently intends to buy a home. A plaintiff lacks Article III standing to seek injunctive relief without imminent risk of future injury, which here requires "concrete plans" to purchase a home.

*Third*, Plaintiffs agree that they must satisfy *AGC*'s causation and injury factors to establish antitrust standing for their Sherman Act claim. They cannot do so. They attribute their alleged injury—inflated home prices paid by home buyers—to a guideline requiring disclosure of broker commission fees, a tenuous causal chain with too many links to confer standing. And they fail to explain how their alleged injury accounts for the numerous variables that set home prices. These failures also doom 25 of Plaintiffs' state antitrust claims, to which *AGC* applies. Plaintiffs assert that *AGC* does not apply in those states because courts have permitted indirect purchaser claims *in some cases* and others have not expressly adopted *AGC*, but these states' harmonization provisions establish a presumption in favor of applying *AGC* to these claims.

*Fourth*, Plaintiffs contend their claims are not moot despite NAR's decision to change the very guidelines Plaintiffs challenge as part of settlements, but it is irrelevant that Hanna Holdings is not a party to those settlements, as the core of Plaintiffs' theory is that Hanna Holdings follows NAR guidelines.

*Fifth*, Plaintiffs cite cases with materially different facts than the allegations in the Amended Complaint to argue their theory of harm is sufficiently direct to establish standing for the challenged consumer protection claims, but their indirect injuries are too remote for the same reasons they fail *AGC*.

*Finally*, Plaintiffs contend they can bring unjust enrichment claims even under the laws of states that bar indirect purchaser recovery for their other claims, but this would circumvent those states' clear policy decisions not to allow such recovery.

**ARGUMENT**

## I. Plaintiffs Have Not Alleged Article III Standing To Pursue Claims Under The Laws Of 13 States In Which They Do Not Reside Or Did Not Suffer Injury

Plaintiffs wrongly contend they have Article III standing for claims under the laws of the 13 states where no named plaintiff resides or purchased a home. *See* Dkt. 64 ("Opp.") at 4-5. Plaintiffs do not dispute that no named plaintiff could bring these claims on their own. Instead, they attempt to sidestep this constitutional requirement by arguing it does not apply to putative class actions. *Id.* They are wrong. The Supreme Court has held "'[t]hat a suit may be a class action … adds nothing to the question of standing.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996). As a result, the named plaintiffs must still "'demonstrate standing for each claim [they] seek[] to press'" *on their own*, without reliance on "any harm to unnamed class members," as that "cannot constitute injury in fact." *Long v. SEPTA*, 903 F.3d 312, 323, 325 (3d. Cir. 2018). This Court therefore lacks jurisdiction over the claims under the 13 state laws for which no named plaintiff has standing.[1]

---

[1] These states are California, Hawaii, Kansas, Michigan, Montana, Nebraska, New Hampshire, New Jersey, North Dakota, Pennsylvania, Rhode Island, Utah, and Vermont. *See supra* pp. i-iii.

In arguing otherwise, Plaintiffs distort the Third Circuit's decision in *Neale*, which addressed the entirely separate issue of the "Article III standing of absent class members." *See* Opp. 5 (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015)). While *Neale* concluded that *absent class members* "need not establish Article III standing," it unambiguously affirmed the longstanding principle that *named plaintiffs* must do so: "Named plaintiffs are the individuals who seek to invoke the court's jurisdiction and they are held accountable for satisfying jurisdiction." 794 F.3d at 362, 364. The Article III inquiry is therefore limited to evaluating named plaintiffs without any consideration of putative class members and their standing had they brought these claims on their own. Plaintiffs, as a result, are wrong that they can establish standing if "'the state law claims of named plaintiffs largely parallel those of the putative class members.'" Opp. 5 (cleaned up).

Since *Neale*, many district courts in this Circuit have dismissed state law claims where the named plaintiffs lacked standing, even if some absent class member might have had standing to bring the claim on their own.[2] These well-reasoned decisions, many of which explicitly rely on *Neale*, disprove Plaintiffs' assertion that Hanna Holdings' position "represent[s] a disfavored minority view." *See* Opp. 6. *Jones v. CVS Health Corp.*, 2024 WL 4643514 (E.D. Pa. Oct. 31, 2024), *see* Opp. 6, does not support an argument otherwise. And, regardless, as Hanna Holdings has explained, the position adopted by cases like *Jones* is inconsistent with the directives of recent Supreme Court decisions on standing. *See, e.g. TransUnion LLC v. Ramirez*, 594 U.S.

[2] *See, e.g., Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp*., 2017 WL 4235773, at *13 (E.D. Pa. Sept. 25, 2017); *Talbert v. Am. Water Works Co., Inc*., 538 F. Supp. 3d 471, 482-483 (E.D. Pa. 2021); *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig*., 2022 WL 736250, at *17-18 (D. Del. Mar. 11, 2022); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 222-223 (D.N.J. 2020); *Snowdy v. Mercedes-Benz USA, LLC*, 2024 WL 1366446, at *5-7 (D.N.J. Apr. 1, 2024).

413, 424-425 (2021) (instructing "federal courts [not] to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts").

Plaintiffs are similarly wrong to rely on decisions from other circuits, *see* Opp. 6, as those decisions "are inconsistent with binding Third Circuit law" as articulated in *Neale*, *see Sensipar*, 2022 WL 736250, at *17. For example, Plaintiffs cite *In re Asacol Antitrust Litig.*, 907 F.3d 42, 50-51 (1st Cir. 2018), *see* Opp. 6, but the First Circuit's holding "that named plaintiffs have Article III standing to assert claims held by absent class members where the claims of the named plaintiffs 'parallel' those of the putative unnamed class members" is irreconcilable with *Neale*'s rejection of jurisdiction merely because a claim "'arose from the same nucleus of operative fact as another claim,'" *In re Sensipar*, 2022 WL 736250, at *17.

And because "class representatives must meet Article III standing requirements the moment a complaint is filed," *see Neale*, 794 F.3d at 367, Plaintiff's proposed alternative—leaving this determination until the class certification stage—is a nonstarter. As another court in this district explained, it would be futile and wasteful to allow Plaintiffs "to embark on lengthy class discovery" when they have suffered "no injuries in relation to the laws of certain states referenced in their complaint" because the Court would "be faced with the same problem months down the road" at class certification where they would seek "to represent the claims of parties whose injuries and modes of redress they would not share." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009). In other words, Plaintiffs attempt to delay the inevitable, a delay that the Constitution does not allow and judicial efficiency cautions against. The Court must therefore dismiss these claims under the laws of these states, and—because Plaintiffs already had a chance to and attempted to remedy this deficiency—it should do so with prejudice.

## II. Plaintiffs Lack Article III Standing For Their Sherman Act Claim

Plaintiffs misstate the necessary injury for injunctive relief under Article III, claiming that a plaintiff must merely show "'that he is likely to suffer future injury from the defendant's conduct.'" Opp. 6 (quoting *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)). But as *McNair* itself explains, this standard requires that the threat of injury be "'imminent, not conjectural or hypothetical.'" 672 F.3d at 223. This means that "a 'possible future injury'—even one with an 'objectively reasonable likelihood' of occurring—is not sufficient" to establish standing. *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 153 (3d Cir. 2022).

What Plaintiffs have described in their opposition brief is the epitome of a hypothetical injury. No named plaintiff has articulated any actual plan to purchase a home in the future, instead pointing to "common scenarios" that *could* arise. *See* Opp. 7. But "could" doesn't cut it. The Supreme Court has held that such "'some day' intentions—without any description of concrete plans"—are insufficient to establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Indeed, the Third Circuit has already found allegations nearly identical to those made by Plaintiffs inadequate to confer standing. In *In re New Jersey Title Insurance Litigation*, the court dismissed title insurance purchasers' Clayton Act claim for injunctive relief because plaintiffs failed to demonstrate "any … plans to buy title insurance in the future." 683 F.3d 451, 461 (3d Cir. 2012). The court expressly rejected plaintiffs' allegation that "'people who have already purchased real estate are most likely to do so again'" and that "'homeowners, on average, change residence every seven years'" as "failing to raise [plaintiffs'] claims above the speculative level." *Id.* And as *In re New Jersey Title Insurance Litigation*—an antitrust case—demonstrates, standing's "immediacy" requirement is not limited to "claims of deception," as Plaintiffs argue bizarrely. *See* Opp. 7-8. Nor does Plaintiffs' claim that they cannot "sidestep

the entire brokerage industry when they need to purchase their next home," Opp. 8, justify a determination of standing now when they have no concrete plans to purchase a home at all.

None of the decisions Plaintiffs cite involving "virtually the same factual allegations" ruled on Article III standing to pursue injunctive relief, and it does not appear defendants moved to dismiss on this basis. *See* Opp. 7 (citing *Moehrl*, *Nosalek*, and *Sitzer*). Those decisions therefore are irrelevant. Because Plaintiffs lack Article III standing to pursue injunctive relief (the only remedy Plaintiffs seek on that claim), the Sherman Act claim must be dismissed.

## III. Plaintiffs Do Not Satisfy The Requirements Of Antitrust Standing For Any Antitrust Claims

### A. Plaintiffs Lack Antitrust Standing For Their Sherman Act Claim Under *AGC*

Plaintiffs concede that *AGC* applies to their Sherman Act claim for injunctive relief, *see* Opp. 9, but fail to explain why they can meet their burden of satisfying its factors. In fact, *Batton I* already found plaintiffs lacked antitrust standing for their injunctive relief claim under the Sherman Act. *See Batton v. NAR (Batton I)*, 2024 WL 689989, at *10 (N.D. Ill. Feb. 20, 2024). Plaintiffs obfuscate this important holding by citing *Batton I* as evidence that their "precise allegations have already survived a motion to dismiss in a parallel home buyer action," a point true only as to plaintiffs' other claims in that case. *See* Opp. 9. And given that *Batton I* does not support their case, it is unsurprising that Plaintiffs rely on *home seller* cases like *Moehrl* and *Burnett* in trying to defend their theory of injury on behalf of *home buyers*. *See id.* at 9-10.

At its core, *AGC* requires "proximate cause" between a plaintiff's alleged injury and a defendant's purportedly anticompetitive conduct. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 438 (3d Cir. 2000). But Plaintiffs' Amended Complaint traces an impermissibly "'tenuous line of causation,'" *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1167 (3d Cir. 1993): (1) Hanna Holdings' affiliates allegedly conspired with NAR and other real

estate brokerages to adopt certain guidelines, including a guideline requiring disclosure of broker commissions; (2) these guidelines somehow result in the inflation of buyer-broker commissions even though the buyer does not pay anything for that service; (3) a seller-broker then offers an inflated commission rate to a buyer-broker, even though the seller-broker is paying the buyer-broker's commission out of its own commission; (4) a home seller pays the buyer-broker fees; and (5) retroactively those somehow inflated buyer-broker fees dominate over all other factors that go into home pricing and cause the home buyer to overpay for their house, *see, e.g.*, Am Compl. ¶¶ 4, 10, 67-69. Plaintiffs admit their fanciful theory relies on far too many causal leaps and affirmatively argue in their responsive briefing that "offers of compensation made by seller-brokers" are "completely independent of the buyer-broker contract." Dkt. 63 at 7. *AGC* and subsequent cases make clear that this theory cannot survive, even on a motion to dismiss.

Not only are Plaintiffs' injuries (allegedly inflated home prices) "too remotely connected in the causal chain," *Allegheny Gen. Hosp.*, 228 F.3d at 441, but also their theory ignores innumerable confounding variables that shape what price a buyer pays for a home. Contrary to Plaintiffs' assertion, pricing a home is "difficult," *see* Opp. 10, and numerous factors—from how quickly a seller wishes to sell to the current supply of homes available in a community—influence the initial listing price and the final sale price. Given these variables, "'any attempt to ascertain what price'" home sellers "'would have charged had there not been a conspiracy would at the very least be highly conjectural.'" *Lower Lake Erie*, 998 F.2d at 1167.

Plaintiffs therefore err in claiming that the "*AGC* factors that relate to *damages* are not relevant to standing to seek injunctive relief." *See* Opp. 9 (cleaned up). That there are "more direct victims" pursuing identical relief and a high risk of "duplicative recovery"—which is unrefuted, *see* Opp. 9-10—reinforces that Plaintiffs allege an insufficient "causal connection"

predicated on an indirect "injury," which they concede they must establish to satisfy *AGC*. *See Lower Lake Erie*, 998 F.2d at 1165; *see also Leeder v. NAR*, 601 F. Supp. 3d 301, 313 (N.D. Ill. 2022) (no antitrust standing for injunctive relief because home sellers are "more directly injured by [the] alleged antitrust violations"); *Batton I*, 2024 WL 689989, at *10 (similar).

Plaintiffs are similarly wrong that it is inappropriate to rule on antitrust standing at the pleading stage, as *Batton I* makes clear. *See* Opp. 10; 2024 WL 689989, at *10; *see also Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932 (3d Cir. 1999) (affirming dismissal where "causal links" alleged were "too numerous and speculative" to satisfy *AGC*). And it makes no sense that Plaintiffs can satisfy antitrust standing for their Sherman Act claim because they also bring "a host of state law claims," Opp. 10, and *Batton I* correctly rejected this argument, *see* 2024 WL 689989, at *10. Plaintiffs' failure to satisfy *AGC* therefore presents another independent ground for dismissing their Sherman Act claim.

**B. Plaintiffs Lack Antitrust Standing To Bring 25 State Antitrust Claims**

Plaintiffs concede that courts interpret states' harmonization provisions to apply *AGC* to their antitrust laws absent state authority to the contrary, *see* Opp. 11, yet offer no "state authority to the contrary" sufficient to override these harmonization provisions, Mot. 13. Plaintiffs' arguments largely fall into four categories: (1) the state cases applying *AGC* are irrelevant because they were not brought by indirect purchasers[3]; (2) *AGC* does not apply because a state has previously allowed for indirect purchaser claims under an *Illinois Brick* repealer statute or state court decision[4]; (3) *AGC* does not apply because no state court has

[3] Plaintiffs advance this argument for the following states: California, Iowa, Kansas, Maine, Michigan, Nebraska, Nevada, New Mexico, New York, North Dakota, Vermont, Washington D.C., and Wisconsin.
[4] Plaintiffs advance this argument for the following states: Arizona, Hawaii, Maine, Maryland, Michigan, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, Utah, Vermont, Washington D.C., and West Virginia.

affirmatively held *AGC* applies to indirect purchaser claims[5]; and (4) states would modify the *AGC* factors so as to not conflict with *Illinois Brick* repealer statutes.[6] Each argument fails.

*First*, Plaintiffs concede that courts in 13 states have applied *AGC* to state antitrust claims. *See* Opp. 13-22. Plaintiffs try to avoid these cases because they were not brought by indirect purchasers. That is beside the point. Indirect purchasers are not *better* positioned than direct purchasers to bring claims. As Plaintiffs' cases recognize, these states apply *AGC* as a limit on antitrust standing regardless of who sues.[7] *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1156 (N.D. Cal. 2009) (California, Iowa, Nebraska); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 260 (S.D.N.Y. 2019) (Michigan, New Mexico).

*Second*, Plaintiffs incorrectly assert (Opp. 11-13) that states with *Illinois Brick* repealer statutes necessarily do not apply *AGC*. *Illinois Brick* and *AGC* are "analytically distinct doctrines." Opp. 11 (quoting *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 815 (N.D. Ill. 2017)). *Illinois Brick* established a bright-line rule against recovery by indirect purchasers under the Clayton Act's damages provision, *see Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 500 (D.N.J. 2014), whereas *AGC* established a multi-factor prudential standing limitation based on proximate cause, *see D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 494 (E.D. Pa. 2006). For this reason, states may—and indeed, often do—pass *Illinois Brick* repealer statutes *and* apply *AGC*'s prudential limitation to remote claims. Courts thus regularly apply *AGC* to evaluate indirect purchaser claims brought

---

[5] Plaintiffs advance this argument for the following states: Connecticut, Hawaii, Illinois, Michigan, North Dakota, Rhode Island, and Utah.
[6] Plaintiffs advance this argument for the following states: Kansas, Maine, Nevada, New Hampshire, New Mexico, New York, Rhode Island, and Utah.
[7] *See supra* pp. i-iii.

under the laws of *Illinois Brick* repealer states, as cases that Plaintiffs themselves cite hold. *See* Opp. 12-13 (citing cases).

Moreover, that a state does not categorically prohibit indirect purchaser claims does not mean that the state places no prudential limits on standing. In fact, a state's affirmative choice to repeal *Illinois Brick* and not *AGC* necessarily implies that the state has chosen to apply *AGC*. *See, e.g.*, *Clayworth v. Pfizer*, Inc., 233 P.3d 1066, 1082 n.18 (Cal. 2010) (explaining Legislature's decision to pass law allowing indirect purchaser suits because *Illinois Brick* otherwise would have applied to state law). That is why courts repeatedly hold, consistent with state statutory harmonization provisions, that even *Illinois Brick* repealer states would follow *AGC* where there is no contrary state law. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *3-5 (N.D. Ill. June 29, 2015).

Plaintiffs' concern that "strict application of" *AGC* would "virtually *always* lead to a finding of no standing for indirect purchaser claims," Opp. 11-12, is illusory. The cases Plaintiffs cite simply advise against strictly applying a single *AGC* factor to determine whether a plaintiff has standing, which is consistent with the multi-factor nature of test set forth in *AGC*. *See D.R. Ward*, 470 F. Supp. 2d at 503 (existence of more direct purchasers not dispositive); *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *18 (D.N.J. Oct. 2, 2013) (potential for duplicative recovery not dispositive).

*Third*, Plaintiffs ask this Court to ignore states' clear legislative demand to interpret their antitrust laws in accordance with federal law, including *AGC*, on the basis that no state court has expressly held that *AGC* applies. But that flips the presumption on its head. Against the backdrop of harmonization provisions, federal courts apply *AGC* to state law claims so long as no state court decision holds that *AGC* does not apply. *See* Mot. 13.

*Fourth*, without citing to any relevant authority, Plaintiffs assert that states would modify the *AGC* factors so as to not conflict with *Illinois Brick* repealer statutes. The cases Plaintiffs cite, however, say nothing about states modifying *AGC*. *See, e.g.*, Opp. 17 (citing *In re Broiler Chicken*, 290 F. Supp. 3d at 815, and *In re Flash Memory*, 643 F. Supp. 2d at 1156). And of course, they point to no statute or state law decision actually doing so. Moreover, Plaintiffs would lack antitrust standing even under modified *AGC* factors. For example, Plaintiffs concede they do not satisfy the antitrust standing requirements in Connecticut, Hawaii, and Minnesota, all of which have modified *AGC* or adopted similar prudential standing limits. *See* Mot. 15, 17.

Plaintiffs' remaining state-specific arguments are also unavailing:

<u>Illinois</u>: Plaintiffs cannot defy Illinois' express statutory directive that "no person shall be authorized to maintain a class action … for indirect purchasers" but for "this State's Attorney General." *See* 740 Ill. Comp. Stat. § 10/7(2). This Court should adopt the "prevailing view" that the Illinois Antitrust Act's prohibition on indirect purchaser class actions is a substantive rule that must be applied instead of Federal Rule of Civil Procedure 23. Mot. 15-16 (quoting *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 834 (E.D. Pa. 2019)).

<u>Maryland</u>: Plaintiffs incorrectly assert that a Maryland court has held *AGC* does not apply. *See* Opp. 16 (citing *State v. Philip Morris Inc.*, 1997 WL 540913, at *19-20 (Md. Cir. Ct. May 21, 1997)). That court actually held Maryland could sue based on an express statutory grant of state standing. The court thus concluded *the state* was not barred by the "indirect purchaser rule"—*i.e.*, *Illinois Brick*, not *AGC*—from asserting a claim. Other federal courts have considered this and held *AGC* would apply to a claim by a private party. *See* Mot. 16.

<u>North Carolina</u>: Plaintiffs' reliance (Opp. 19) on *Teague v. Bayer AG*, 671 S.E.2d 550 (N.C. App. 2009), is misleading. *Teague* states only that *AGC* does not apply to plaintiffs who

"end up with a product supplied by the defendants," *id.* at 556, and is not generalizable to all types of indirect purchasers. For this reason, "*Teague* cannot be interpreted as a wholesale rejection of *AGC*." *In re Dairy Farmers*, 2015 WL 3988488, at *15. Instead, courts look to the "persuasive" and "well-supported" decision in *Crouch v. Crompton Corp.*, 2004 WL 2414027, at *2 (N.C. Super. Oct. 28, 2004), which held *AGC* applies to other types of indirect purchaser claims like this one, where the home is not "supplied" by Hanna Holdings.

Accordingly, Plaintiffs lack standing to assert any of their state antitrust claims.

## IV. Plaintiffs' Sherman Act Claim For Injunctive Relief Is Moot

Plaintiffs argue that their Sherman Act claim for injunctive relief is not moot because Hanna Holdings is not a party to the NAR settlement requiring the guideline changes Plaintiffs seek here. *See* Opp. 8-9. But Plaintiffs' own theory of this case makes clear why they are wrong. They allege that Hanna Holdings is "a member of NAR," and as such has allegedly engaged in "anticompetitive" conduct by "adopt[ing] and enforc[ing]" NAR guidelines. Am. Compl. ¶¶ 9, 46. Thus, to the extent NAR's guidelines have changed, as the settlements make clear they have, NAR's members will no longer "implement NAR's [allegedly] anticompetitive agreements." *Id.* ¶ 10. And, in fact, they cannot, as "NAR members may" only "list their properties on NAR MLSs … if they agree to adhere to and implement" NAR's guidelines. *Id.* ¶ 5. As a result, "there is no reasonable expectation" that "the wrongs" Plaintiffs allege "will be repeated" by Hanna Holdings or other NAR members. *See Lutter v. JNESO*, 86 F.4th 111, 130-131 (3d Cir. 2023).

Plaintiffs point to conduct that supposedly may stem from the guideline changes in the NAR settlement, *see* Opp. 8-9, but Plaintiffs have not challenged these changes in the Amended Complaint and "may not assert new claims or rely on new facts in response to a motion to

dismiss," *see Boston v. Prime Care Med., Inc.*, 2018 WL 3032853, at *5 n.6 (E.D. Pa. June 18, 2018). Mootness is therefore yet another basis for dismissing Plaintiffs' Sherman Act claim.

## V. Plaintiffs Lack Standing To Bring Several Consumer Protection Claims

Plaintiffs have no compelling response to Hanna Holdings' arguments that they lack standing to assert numerous consumer protection claims. *See* Mot 21-23.

Arizona: An Arizona consumer protection claim must relate to a sale between the parties, and Plaintiffs do not allege that Hanna Holdings sold them anything, *see* Mot. 22; the only case Plaintiffs cite, Opp. 23 (citing *Cheatham v. ADT Corp.*, 161 F. Supp.3d 815, 825 (D. Ariz. 2016)), does not discuss this requirement because the plaintiff was a direct purchaser.[8]

Connecticut: Even if Connecticut consumer protection law does not strictly require a business relationship between the parties, standing is nonetheless "restricted to those parties directly injured by a defendant's conduct," *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 290 (Conn. 2019), and a plaintiff may lack standing for "reasons of remoteness and derivativeness," *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 133 (Conn. 2001). Plaintiffs' claim is too remote for the same reason their antitrust claims are too remote. Mot. 11-12.

Massachusetts: Plaintiffs must, but do not, plausibly allege a causal connection between the injury and the unfair or deceptive acts or practices. *See Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*, 840 N.E.2d 526, 528 (Mass. 2006); Mot. 11-12.

Missouri: Indirect purchasers cannot bring a Missouri consumer protection claim based on antitrust injury, which would undermine *Illinois Brick*. *See* Mot. 23; *Ireland v. Microsoft Corp.*, 2001 WL 1868946, at *1 (Mo.Cir. Jan. 24, 2001). The only Missouri state court decision

[8] Davis is the only Plaintiff with an alleged business relationship with Hanna Holdings or its affiliates, and Davis' claims must be dismissed for failure to abide by his contractual obligation to mediate before filing suit. *See* Dkt. 60 ("Mediation Br.") at 1-6.

Plaintiffs cite, Opp. 24 (citing *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007)), does not concern anticompetitive conduct and is therefore inapposite.

New York: Plaintiffs concede that indirect injuries cannot support a New York consumer protection claim, Opp. 24, yet they only allege remote injuries, Mot. 11-12. Plaintiffs' assertion that they allege direct injuries from "misrepresentation[s]" "directed at them as homebuyers" lacks any factual basis because no Plaintiff alleges Hanna Holdings made such representations.

North Carolina: Plaintiffs do not dispute that North Carolina requires a business relationship between the parties, and no such relationship exists here. Mot. 22.

South Carolina: Even if South Carolina consumer protection law does not require strict privity, Plaintiffs nonetheless lack standing because they do not plausibly allege *any* casual connection between the injury and the alleged misconduct, which the law requires. *See State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 189 (S.C. 2015); Mot 11-12.

Washington D.C.: Plaintiffs assert D.C. does not impose a business relationship requirement based on a single case (Opp. 22) that recommended dismissal only because the defendant "ha[d] not identified any case law interpreting the … law to require a showing a privity." *In re Philips Recalled CPAP, Bi-Level PAP, & Ventilator Prods. Litig.*, 2023 WL 7019287, at *33 (W.D. Pa. Sept. 28, 2023). Hanna Holdings has identified a case clearly holding that D.C. law requires privity, and there is none here. *See* Mot. 22 (citing *Peterson v. Visa U.S.A., Inc.*, 2005 WL 1403761, at *5 (D.C. Super. Ct. Apr. 22, 2005)).

## VI. Plaintiffs Lack Standing To Bring Several Unjust Enrichment Claims

Each of Plaintiffs' attempted defenses of their unjust enrichment claims fails.

*First*, Plaintiffs do not dispute (Opp. 25) that most courts have held indirect purchasers may not bring state law claims for unjust enrichment if they would be barred from bringing a claim under that state's antitrust and consumer-protection statutes. Mot. 23. The Court should

adopt this majority position, rather than the minority position Plaintiffs press, because "allowing indirect payor plaintiffs to recover through unjust enrichment for what are essentially antitrust violations, when states do not allow recovery under the antitrust statutes themselves, would circumvent state policy on this issue." *Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 425 (E.D. Pa. 2010). Moreover, that Plaintiffs purportedly plead unjust enrichment in the alternative (Opp. 25) is irrelevant to whether indirect purchasers like Plaintiffs have standing and also impermissible under the laws of several states. *See, e.g.*, *JP Mack Indus. LLC v. Mosaic Fertilizer*, LLC, 970 F. Supp. 2d 516, 521 (E.D. La. 2013) ("availability of other remedies at law … precludes an unjust enrichment claim").

*Second*, to the extent Plaintiffs are pursuing unjust enrichment claims under the laws in Illinois, Missouri, and Florida, which have adopted *Illinois Brick*, they must be dismissed for lack of standing in accordance with these states' legislative decisions. Plaintiffs fail to identify the state laws under which they are pursuing unjust enrichment claims, which is a separate reason for dismissal. *See* Dkt. 59 ("Failure to State Claim Brief") at 23-24.

*Third*, Plaintiffs are incorrect that their consumer protection allegations can support a claim for unjust enrichment even if their antitrust allegations cannot. Plaintiffs—other than Davis, whose claims must be dismissed—do not allege that Hanna Holdings was their buyer-broker. *See* Am. Compl. ¶¶ 21-45. Therefore, Plaintiffs cannot plausibly allege that *Hanna Holdings* "misled them about the cost of buyer-agent services, and did not permit them to negotiate commission rates." Opp. 26. Only the Plaintiffs' buyer-brokers could have done so.

**CONCLUSION**

For the foregoing reasons, Hanna Holdings' motion to dismiss for lack of standing and mootness should be granted and the case should be dismissed with prejudice.

Date: January 31, 2025

Respectfully submitted,

*/s/ David Z. Gringer*
David Z. Gringer*
Emily Barnet*
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.gringer@wilmerhale.com
emily.barnet@wilmerhale.com

Seth P. Waxman*
Karin Dryhurst*
Claire M. Bergeron*
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com
karin.dryhurst@wilmerhale.com
claire.bergeron@wilmerhale.com

John R. Brumberg
Pa. I.D. No. 311352
William Pietragallo II
Pa. I.D. No. 16413
Quintin DiLucente
Pa. I.D. No. 330648
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Fl.
Pittsburgh, PA 15219
(412) 263-1836
JRB@Pietragallo.com
WP@Pietragallo.com
QD@Pietragallo.com

*Attorneys for Hanna Holdings, Inc.*

*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 31, 2025, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record registered with the CM/ECF system.

*/s/ David Z. Gringer*
David Z. Gringer