**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SCOTT DAVIS, NIALL ADAMS, MYA BATTON, THEODORE BISBICOS, AARON BOLTON, JASON BOOMSMA, THOMAS BRAUN, SABRINA CLARK, RYAN EISNER, STEVEN EWALD, JOHN GARRETT, BRENNON GROVES, DARIN HENDRY, ANNA JAMES, DO YEON IRENE KIM, JAMES LUTZ, JORDAN KULLMANN, JAMES MULLIS, DANIEL PARSONS, JOSHUA PUTT, JOHN SANNAR, ROBERT SAYLES, BEN SHADLE, CHRISTINE VAN WOERKON, AND SHERRIE WOHL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HANNA HOLDINGS, INC.,

Defendant.

Case No. 2:24-cv-2374-WB

**Hon. Wendy Beetlestone**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY THE COURT'S MOTION TO DISMISS ORDERS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

QUESTIONS FOR WHICH CERTIFICATION IS SOUGHT ..... 2

ARGUMENT ..... 2

I. The Court Should Certify Whether Plaintiffs Have Standing To Bring Claims Under The Laws Of States Where They Were Not Injured And Do Not Reside ..... 2

A. Whether Plaintiffs Have Article III Standing Is Controlling ..... 2

B. Whether Plaintiffs Have Article III Standing Is A Pure Question of Law ..... 4

C. There Are Substantial Grounds For A Difference Of Opinion Regarding Plaintiffs' Article III Standing ..... 5

D. Immediate Resolution Of Article III Standing Will Materially Advance The Ultimate Termination Of This Litigation ..... 7

II. The Court Should Certify Whether Bare Allegations That Trade Association Members Followed Association Guidelines Are Sufficient To Plead A Horizontal Agreement ..... 8

A. The Horizontal Agreement Question Is Controlling ..... 8

B. The Horizontal Agreement Question Is A Pure Question Of Law ..... 9

C. The Horizontal Agreement Question Presents Substantial Grounds For A Difference Of Opinion ..... 10

D. Immediate Resolution Of The Horizontal Agreement Question Will Materially Advance The Ultimate Termination Of This Litigation ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Beazer East, Inc. v. The Mead Corp.*,
2006 WL 2927627 (W.D. Pa. Oct. 12, 2006) ....................3

*Big Apple BMW, Inc. v. BMW of North America, Inc.*,
974 F.2d 1358 (3d Cir. 1992)....................3

*Consumer Financial Protection Bureau v. Navient Corp.*,
522 F. Supp. 3d 107 (M.D. Pa. 2021) ....................5, 10

*Davis v. Hanna Holdings, Inc.*,
2026 WL 654145 (E.D. Pa. Mar. 9, 2026)....................9, 10, 11

*Davis v. Hanna Holdings, Inc.*,
771 F. Supp. 3d 552 (E.D. Pa. 2025) ....................3, 5, 6

*Davis v. Hanna Holdings, Inc.*,
787 F. Supp. 3d 42 (E.D. Pa. 2025) ....................13

*Dzielak v. Whirlpool Corp.*,
26 F. Supp. 3d 304 (D.N.J. 2014) ....................6

*Elias v. Ungar's Food Products, Inc.*,
252 F.R.D. 233 (D.N.J. 2008)....................7

*F.T.C. v. Wyndham Worldwide Corp.,*
10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015)....................12

*Gress v. Freedom Mortgage Corp.*,
2019 WL 13201962 (M.D. Pa. Sept. 3, 2019) ....................3

*In re Chocolate Confectionary Antitrust Litigation*,
607 F. Supp. 2d 701 (M.D. Pa. 2009) ....................8, 12

*In re Domestic Drywall Antitrust Litigation*,
2016 WL 2941114 (E.D. Pa. May 20, 2016) ....................3, 4, 8

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
368 F. Supp. 3d 814 (E.D. Pa. 2019) ....................5, 6

*In re Horizon Healthcare Services Inc. Data Breach Litigation*,
846 F.3d 625 (3d Cir. 2017)....................7

*In re Insurance Brokerage Antitrust Litigation*,
618 F.3d 300 (3d Cir. 2010)....................10, 11

*In re Karwoski*,
2018 WL 3742626 (D.N.J. Aug. 6, 2018) ....................................................................3

*In re Niaspan Antitrust Litigation*,
42 F. Supp. 3d 735 (E.D. Pa. 2014) .....................................................................5, 6

*In re School Asbestos Litigation*,
977 F.2d 764 (3d Cir. 1992).....................................................................................4, 9

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litigation*,
64 F. Supp. 3d 665 (E.D. Pa. 2014), *on reconsideration in part*, 2015 WL 12910728 (E.D. Pa. Apr. 14, 2015) .........................................................................6

*In re Wellbutrin XL Antitrust Litigation*,
260 F.R.D. 143 (E.D. Pa. 2009).................................................................................6

*Johnson v. National Collegiate Athletic Association*,
108 F.4th 163 (3d Cir. 2024) ......................................................................................4

*Kalow & Springut, LLP v. Commence Corp.*,
2012 WL 6093876 (D.N.J. Dec. 7, 2012)...................................................................7

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974).........................................................................................2

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ....................................................................................12

*Klapper v. Commonwealth Realty Trust*,
662 F. Supp. 235 (D. Del. 1987)..................................................................................3

*Lewis v. Casey*,
518 U.S. 343 (1996)......................................................................................................7

*Long v. Southeastern Pennsylvania Transportation Authority*,
903 F.3d 312 (3d Cir. 2018).........................................................................................7

*McGuire v. BMW of North America, LLC*,
2014 WL 2566132 (D.N.J. June 6, 2014)....................................................................6

*McNair v. Synapse Group Inc.*,
672 F.3d 213 (3d Cir. 2012)..........................................................................................3

*McNulty v. Borden, Inc.*,
542 F. Supp. 655 (E.D. Pa. 1982) ................................................................................3

*Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*,
2011 WL 1044864 (E.D. Pa. Mar. 23, 2011)...........................................................5, 12

*Neale v. Volvo Cars of North America, LLC*,
794 F.3d 353 (3d Cir. 2015)....................................................................................4, 7

*Ponzio v. Mercedes-Benz USA, LLC*,
447 F. Supp. 3d 194 (D.N.J. 2020) ............................................................................6

*Relevent Sports, LLC v. U.S. Soccer Federation*,
61 F.4th 299 (2d Cir. 2023) .................................................................................10, 11

*Rosenberg v. C.R. Bard, Inc.*,
387 F. Supp. 3d 572 (E.D. Pa. 2019) ..........................................................................2

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ......................................................................................12

*Serrano v. Campbell Soup Co.*,
773 F. Supp. 3d 127 (D.N.J. 2025) ..........................................................................5, 6

*Suber v. Liberty Mutual Ins. Group*,
650 F. Supp. 3d 282 (E.D. Pa. 2022) ..........................................................................6

*Taliaferro v. Darby Township Zoning Board*,
458 F.3d 181 (3d Cir. 2006)..........................................................................................3

*United States ex rel. Brown v. Pfizer, Inc.*,
2017 WL 2691927 (E.D. Pa. June 22, 2017) ................................................................8

*Zenith Radio Corp. v. Matsushita Electric Industrial Co.*,
1979 WL 1689 (E.D. Pa. 1979) ....................................................................................2

**DOCKETED CASES**

*Tuccori v. At World Properties, LLC*,
No. 24-cv-00150 (N.D. Ill. 2025) ..................................................................................1

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C. § 1292.......................................................................................1, 2, 3, 4, 13

## INTRODUCTION

The Court's motion to dismiss decisions (Dkt. 84, 123) raise two consequential, unsettled questions of law that could meaningfully advance the termination of this litigation and thus are appropriate for interlocutory review. *See* 28 U.S.C. § 1292(b). *First*, the Court should certify whether a plaintiff has Article III standing to bring class claims under the antitrust laws of states where they were neither injured nor reside. *Second*, the Court should certify whether alleging that trade association members adopted and adhered to a trade association policy is sufficient to plead a horizontal agreement.[1]

As to the first question, the Court's decision that named Plaintiffs have standing to assert claims under the laws of states where they never resided or were injured is subject to significant disagreement and requires the Third Circuit's authoritative resolution. District courts in the Third Circuit sometimes hold that named plaintiffs have Article III standing under these circumstances, but more often hold that they do not. The Third Circuit has yet to address this question. A ruling for Hanna Holdings that the named Plaintiffs lack Article III standing to bring these claims would dramatically streamline the litigation because it would eliminate more than half of Plaintiffs' claims.

As to the second question, the Court's decision that allegations that trade association members adopted and adhered to an association policy are sufficient to plead a horizontal agreement is likewise subject to significant disagreement and requires the Third Circuit's authoritative resolution. Hanna Holdings maintains that Third Circuit law already forecloses the

[1] Hanna Holdings maintains that its settlement in *Tuccori v. At World Properties, LLC*, No. 24-cv-00150 (N.D. Ill. 2025) will resolve all the claims in this case, but files this motion to preserve its rights pending preliminary and final approval of the settlement in *Tuccori* and dismissal of the covered claims by this Court.

Court's conclusion. But at minimum, there is an absence of controlling law, and other circuits have departed from the Second Circuit rule that this Court adopted. And favorable resolution of this issue would defeat Plaintiffs' horizontal conspiracy claim—the crux of their case.

## QUESTIONS FOR WHICH CERTIFICATION IS SOUGHT

1. Whether a plaintiff has Article III standing to bring a class action complaint with claims under the laws of states where the plaintiff was neither injured nor resides.

2. Whether allegations that trade association members adopted and adhered to an association policy are sufficient to plead a horizontal agreement.

## ARGUMENT

This Court can certify these issues for Section 1292(b) interlocutory appeal because as to each, "(1) there is a 'controlling question of law;' (2) 'there is substantial ground for difference of opinion' regarding that question; and (3) 'immediate appeal … may materially advance the ultimate termination of the litigation.'" *Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 581 (E.D. Pa. 2019) (quoting 28 U.S.C. § 1292(b)).

### I. The Court Should Certify Whether Plaintiffs Have Standing To Bring Claims Under The Laws Of States Where They Were Not Injured And Do Not Reside

#### A. Whether Plaintiffs Have Article III Standing Is Controlling

Whether Plaintiffs have Article III standing to bring claims under the laws of states where no named Plaintiff was injured or resides is controlling because its resolution would terminate those claims and seriously impact this litigation. A "controlling" question of law "must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc). "[Q]uestions of law which would not lead to reversal on appeal may also be controlling if they are 'serious to the conduct of the litigation, either practically or legally.'" *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 1979 WL 1689, at *1 (E.D. Pa. 1979) (quoting *Katz*, 496 F.2d at 755); *see also*

*In re Domestic Drywall Antitrust Litig.*, 2016 WL 2941114, at *3 (E.D. Pa. May 20, 2016). For example, questions of law may "qualify as controlling" where "they are practically important to the litigation and may greatly impact trial, including expert testimony, the court's jury charge, and the permissible inferences from the evidence." *Id.*

An Article III standing ruling that has the potential to significantly curtail the scope of the litigation is undoubtedly controlling within the meaning of Section 1292(b). *See McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 222 n.9 (3d Cir. 2012) (describing standing as "a threshold question of law"); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Indeed, "Article III standing is 'one of the clearest examples of a controlling question of law'" because without it, a plaintiff's claim fails. *Gress v. Freedom Mortg. Corp.*, 2019 WL 13201962, at *3 (M.D. Pa. Sept. 3, 2019) (quoting *Beazer E., Inc. v. The Mead Corp.*, 2006 WL 2927627, at *2 (W.D. Pa. Oct. 12, 2006)); *see also McNulty v. Borden, Inc.*, 542 F. Supp. 655, 659 n.3 (E.D. Pa. 1982) ("[O]ur decision to grant standing to plaintiff involved a 'controlling question of law.'"); *In re Karwoski*, 2018 WL 3742626, at *3 (D.N.J. Aug. 6, 2018) ("standing … implicates a controlling issue of law"); *Klapper v. Commonwealth Realty Tr.*, 662 F. Supp. 235, 236 (D. Del. 1987) ("Standing is a 'controlling question of law.'").

Here, Article III standing is a controlling question because a ruling on appeal finding that named Plaintiffs lack standing to bring claims under the laws of states where they did not reside or suffer injury would terminate the claims brought under those state laws. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006); *see also Davis v. Hanna Holdings, Inc.*, 771 F. Supp. 3d 552, 566-567 (E.D. Pa. 2025) (recognizing that this standing challenge is jurisdictional).

**B. Whether Plaintiffs Have Article III Standing Is A Pure Question of Law**

There is no factual dispute regarding Article III standing; it is a pure question of law. Regardless, the Third Circuit does not limit Section 1292(b) to "pure" questions of law, and so this Court should grant this motion even if it finds this question is a mixed one of law and fact.

"[T]he Third Circuit interprets the standard for 'controlling issue of law' more broadly than others." *Domestic Drywall Antitrust Litig.*, 2016 WL 2941114, at *3 n.2. Namely, while some circuits have limited 1292(b) to "pure" questions of law, the Third Circuit has not. *See Johnson v. Nat'l Collegiate Athletic Ass'n*, 108 F.4th 163, 183 & n.1 (3d Cir. 2024) (Porter, J., concurring). Rather, a question may "be deemed a 'controlling question of law,' notwithstanding that it is a fact-intensive, somewhat discretionary issue collateral to the merits." *In re Sch. Asbestos Litig.*, 977 F.2d 764, 777 (3d Cir. 1992). The Article III standing question here clearly satisfies this standard because Article III standing is a legal issue, even if there were relevant factual considerations, too.

In any event, whether named Plaintiffs have standing to pursue claims on behalf of putative class members in states where no named Plaintiff was injured or resides is, in fact, a pure question of law. A pure question of law is "a clear-cut question of law against a background of determined and immutable facts." *Johnson*, 108 F.4th at 183 n.1 (Porter, J., concurring) (citation omitted). Article III standing is a classic "threshold question of law." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015). And this question has a background of determined and immutable facts because named Plaintiffs acknowledge that they bring claims "on behalf of absent class members" in states where named Plaintiffs "did not transact and do not reside." Dkt. 64, at 13.

### C. There Are Substantial Grounds For A Difference Of Opinion Regarding Plaintiffs' Article III Standing

Numerous courts have rejected the argument that this Court adopted: that it has "jurisdiction over all of [named Plaintiffs'] state law claims, even those brought under the laws of states in which no named Plaintiff resides or was injured." *Davis*, 771 F. Supp. 3d at 570. *See, e.g.*, *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758-759 (E.D. Pa. 2014); *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 149 (D.N.J. 2025). The Court here reasoned that because (1) named Plaintiffs "have standing to pursue state law claims under the states where they *do* live or where they *were* injured," and (2) "the state laws under which the named Plaintiffs seek to personally recover are similar enough to the state laws they plead on behalf of absent class members," named Plaintiffs have a "sufficiently personal stake … to assure concrete adverseness." *Davis*, 771 F. Supp. 3d at 570-571 (internal quotation marks omitted). In reaching this conclusion, the Court acknowledged that "the Third Circuit has not explicitly addressed 'how to evaluate Article III and class standing at the motion to dismiss stage where putative class representatives assert claims arising under the laws of states where they neither reside nor allege to have suffered injury.'" *Id.* at 569-570 (quoting *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 829 (E.D. Pa. 2019)). The Court correctly added that even "courts within this District have reached opposing conclusions" on this question. *Id.* at 570.

This is the type of "[q]uestion[]of first impression [that] can present substantial grounds for difference of opinion." *CFPB v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. 2021) (noting that "a substantial ground for difference of opinion must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation"); *see also Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, 2011 WL 1044864, at *3 (E.D. Pa. Mar. 23, 2011). As this Court acknowledged, given the

Third Circuit's silence, there are substantial grounds for difference of opinion as to whether named Plaintiffs can bring claims under the laws of states where they were not injured and do not live. *Davis*, 771 F. Supp. 3d at 569-570. One need look no further than this District to see why. Numerous courts in this District have dismissed state law claims for lack of standing because "named plaintiffs may bring suit only under the laws of states in which they reside or [were injured]." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d at 758-759; *see also In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 694 (E.D. Pa. 2014) (same), *on reconsideration in part*, 2015 WL 12910728 (E.D. Pa. Apr. 14, 2015); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (same).

Meanwhile, other courts in this district have come out the way this Court did, allowing such claims to proceed where "the state law claims of the named [plaintiffs] largely parallel those of the putative class members." *In re Generic Pharms.*, 368 F. Supp. 3d at 827-31; *Suber v. Liberty Mut. Ins. Grp.*, 650 F. Supp. 3d 282, 292 (E.D. Pa. 2022) (same).

Other courts in the Third Circuit have clashed on the same issue. *Compare Serrano*, 773 F. Supp. 3d at 149 ("Applying Article III principles, this Court finds that named plaintiffs in a class action lack Article III standing to bring state-law claims from States that they do not reside in or have not suffered an injury in."); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) (ruling named plaintiffs in putative class action "lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where [p]laintiffs have suffered no alleged injury" and dismissing state law claims "outside of the six states represented by named [p]laintiffs"), *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014) (plaintiff has standing to raise claims "only under the law of the state where he or she lived and the alleged injury occurred"); *and McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *6 (D.N.J. June

6, 2014) ("Plaintiff … lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury."), *with Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 248 (D.N.J. 2008) ("[T]he Court will apply the NJCFA to all members of the class, including those who reside in states other than New Jersey.") *and Kalow & Springut, LLP v. Commence Corp.*, 2012 WL 6093876, at *4 (D.N.J. Dec. 7, 2012) (In nationwide class action, the court held "the NJCFA applies to all proposed class members' claims.").

What is more, U.S. Supreme Court and Third Circuit precedent supports the conclusion that named plaintiffs in a class action lack Article III standing to bring claims under the laws of states where they do not reside and have not suffered injury. The Supreme Court has held that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted). And the Third Circuit has echoed this requirement, holding that "[a] plaintiff must 'demonstrate standing for each claim he seeks to press,'" *Long v. Se. Pa. Trans. Auth.*, 903 F.3d 312, 323 (3d Cir. 2018) (quoting *Neale*, 794 F.3d at 359), and "[t]he requirements for standing do not change in the class action context," *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017). In light of this case law, there are substantial grounds to conclude that named Plaintiffs' claims under the laws of states where they do not reside and were not injured must be dismissed or at least certified for disagreement on this issue.

### D. Immediate Resolution Of Article III Standing Will Materially Advance The Ultimate Termination Of This Litigation

Finally, certification of the Article III standing question will materially advance this litigation by narrowing its scope. A district court "must evaluate whether an appeal could

eliminate the need for a trial, simplify a case by foreclosing complex issues, or enable the parties to complete discovery more quickly or at less expense." *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 707 (M.D. Pa. 2009). But "'[i]t is not required that a reversal of the Court's Order would end the litigation.'" *United States ex rel. Brown v. Pfizer, Inc.*, 2017 WL 2691927, at *5 (E.D. Pa. June 22, 2017) (quoting *Domestic Drywall Antitrust Litig.*, 2016 WL 2941114, at *4). As discussed, named Plaintiffs raise claims under the laws of 13 states where they never resided or were injured. Dismissing these claims would more than halve named Plaintiffs' claims. Importantly, discovery has barely started and appellate review of this critical issue could significantly minimize the need for "prolonged" and "costly" discovery by meaningfully narrowing the scope of named Plaintiffs' claims for violation of state law. *In re Chocolate Confectionary*, 607 F. Supp. 2d at 708. Dismissal of these state law claims would remove the burden of conducting discovery tailored to multiple state statutory schemes, such as consumer-oriented conduct, deceptive practices, and reliance by individual consumers—thereby eliminating the need for the Court to address any disputes related to this discovery and to ultimately adjudicate these claims.

## II. The Court Should Certify Whether Bare Allegations That Trade Association Members Followed Association Guidelines Are Sufficient To Plead A Horizontal Agreement

### A. The Horizontal Agreement Question Is Controlling

The question of whether plaintiffs can plausibly plead a horizontal agreement simply by alleging that defendants adopted and adhered to a trade association policy controls here. As noted above, an issue is controlling if it would lead to reversal on appeal *or* is practically or legally important to the conduct of the litigation—even if fact-intensive or collateral to the merits. *See supra* p. 4.

The horizontal agreement question presented here meets this standard. The core of Plaintiffs' case rests upon an alleged horizontal agreement between Hanna Holdings and (unspecified) competitor brokerages; such an agreement is necessary both to establish a horizontal conspiracy and a hub-and-spoke conspiracy, as this Court recognized. *See Davis v. Hanna Holdings, Inc.*, 2026 WL 654145, at *16 & n.17 (E.D. Pa. Mar. 9, 2026). Even if Plaintiffs could, theoretically, proceed solely on the theory that Hanna Holdings entered into a vertical conspiracy with the National Association of Realtors (NAR), they have chosen not to do so—seemingly in recognition that the marketwide anticompetitive effects they claim stem only from a horizontal (or hub-and-spoke) agreement. And the Court held that Plaintiffs plausibly alleged a horizontal agreement solely on the ground that Plaintiffs pleaded adherence to an association rule as "direct evidence" of concerted action. *See id.* at *16 ("In short, plaintiffs may plead adherence to a binding association rule as direct evidence of a defendant's concerted action. And because Plaintiffs have done so here, they plausibly allege a horizontal agreement."). Thus, resolution of the question presented—whether pleading adherence to an association policy is sufficient to plausibly allege a horizontal agreement—in Hanna Holdings' favor would likely lead to dismissal of Plaintiffs' antitrust claims. At the very least, resolution in Hanna Holdings' favor would be practically and legally important to the litigation because it would drastically narrow Plaintiffs' antitrust claims, limiting them to a vertical agreement theory—the very theory Plaintiffs chose not to proceed with alone following dismissal of their first amended complaint.

### B. The Horizontal Agreement Question Is A Pure Question Of Law

The horizontal agreement question easily satisfies the Third Circuit's test for a controlling "question of law"—which, as noted above, can include even a "fact-intensive, somewhat discretionary issue collateral to the merits." *In re Sch. Asbestos Litig.*, 977 F.2d at 777. But

though not required in the Third Circuit, *see supra* p. 4, the horizontal agreement question is also a pure question of law. No factual development is required; the question is simply whether, as a general matter, plaintiffs can plead a horizontal agreement by alleging that defendants adopted and adhered to a trade association policy. This Court's analysis of *Relevent Sports* makes that clear. Rather than holding that *Relevent Sports* was fact-bound, this Court relied on it to draw the broad legal conclusion that "to satisfy § 1's requirement of an agreement at the pleading stage, plaintiffs may plead the association rule as direct evidence of the members' concerted action." *Davis*, 2026 WL 654145, at *12-15. But, as explained below, that is not the law in the Third Circuit.

### C. The Horizontal Agreement Question Presents Substantial Grounds For A Difference Of Opinion

There are substantial grounds for a difference of opinion regarding whether allegations that defendants adopted and adhered to a trade association policy are sufficient to plausibly plead a horizontal agreement. As noted, substantial grounds for difference of opinion can arise from either conflicting legal precedent or the absence of controlling law. *See supra* p. 5; *CFPB*, 522 F. Supp. 3d at 113. Here, there is conflicting precedent, and at minimum, an absence of controlling law. While *Relevent Sports, LLC v. U.S. Soccer Federation* held that plaintiffs can plead a horizontal agreement by alleging, without more, that a trade association "policy or rule *is the agreement itself*," 61 F.4th 299, 308 (2d Cir. 2023) (emphasis added), this Court acknowledged that *Relevent Sports* is "not binding" in the Third Circuit. *Davis*, 2026 WL 654145, at *14.

As Hanna Holdings explained in its motion to dismiss, *Relevent Sports* squarely conflicts with the Third Circuit's decision in *In re Insurance Brokerage Antitrust Litigation*. Plaintiffs in *Insurance Brokerage* alleged that insurance brokers entered a "global conspiracy" to conceal fellow brokers' receipt of commission payments in return for steering customers to certain

insurers, and did so by adopting and adhering to an allegedly anticompetitive trade association policy governing disclosure of contingent commissions. 618 F.3d 300, 348-349 (3d Cir. 2010). But the Third Circuit upheld the dismissal of the complaint for failure to plead concerted action, explaining that "neither defendants' membership in the [association], nor their common adoption of the trade group's suggestions, plausibly suggest conspiracy." *Id.* at 349. This Court found "no tension between *Insurance Brokerage* and *Relevent Sports*," reasoning that "*Insurance Brokerage* plaintiffs proceeded under a circumstantial evidence theory, and they alleged that the brokers' common adoption of the trade association's 'proposed approach' was a 'plus factor' tending to indicate there was a separate agreement" while "*Relevent Sports* addressed the parameters for treating a binding association rule as direct evidence of a conspiratorial agreement." *Davis*, 2026 WL 654145, at *15.

The Third Circuit in *Insurance Brokerage* implicitly recognized that the association policy—which, plaintiffs alleged, the defendants adopted, even if they were not bound to do so—was not direct evidence of an agreement. Had it been, the court would not have needed to consider whether the policy was circumstantial evidence. *See Insurance Brokerage*, 618 F.3d at 323-324, 324 n.23. Indeed, the Third Circuit's discussion of what constitutes "direct evidence of a conspiracy" strongly suggests that an association policy would not suffice; rather, direct evidence looks like "a document or conversation explicitly manifesting the existence of the agreement in question." *Id.* at 324 n.23.

Even if *Relevent Sports* did not conflict with *Insurance Brokerage*, the Third Circuit has not expressly adopted the holding of *Relevent Sports*, as this Court acknowledged. *Davis*, 2026 WL 654145, at *14. And, as noted, "[t]he sheer absence of any persuasive, let alone controlling, law on [an] issue is sufficient on its own to provide substantial grounds for difference of

opinion." *Nationwide Life Ins. Co.*, 2011 WL 1044864, at *3; *see also F.T.C. v. Wyndham Worldwide Corp.,* 10 F. Supp. 3d 602, 634-635 (D.N.J. 2014) (certifying for appeal an issue of first impression regarding the application of the FTC Act to a data security breach and noting that the "novelty" of the liability issues means that "reasonable jurists may differ over the court's resolution" of the issues), *aff'd*, 799 F.3d 236 (3d Cir. 2015).

That is especially true here, given that other circuits have disagreed with the holding in *Relevent Sports*. In *Kendall v. Visa U.S.A., Inc.*, for example, merchants alleged that two consortiums consisting of credit card companies and banks conspired to fix fees for credit card sales, submitting that defendants' membership and participation in the consortium sufficed to show an agreement among them to charge the fees set by the consortium. 518 F.3d 1042, 1045-1048 (9th Cir. 2008). The Ninth Circuit upheld dismissal of that claim, explaining that allegations that the defendant banks merely "adopt[ed]" or "follow[ed]" a rule governing fees were "insufficient as a matter of law" to plead a Section 1 conspiracy. *Id.* at 1048. Similarly, in *SD3, LLC v. Black & Decker (U.S.) Inc.*, a merchant alleged that members of trade groups conspired to impose anticompetitive industry standards. 801 F.3d 412, 435 (4th Cir. 2015). The Fourth Circuit rejected the plaintiff's argument that the promulgation of these standards, without more, established concerted action—even though plaintiff alleged that "some of the defendants' representative[s] served on the relevant standard-setting panel." *Id.* at 436.

### D. Immediate Resolution Of The Horizontal Agreement Question Will Materially Advance The Ultimate Termination Of This Litigation

Finally, the Court should grant certification because interlocutory review of the horizontal agreement question could clearly "eliminate the need for a trial, simplify [the] case by foreclosing complex issues, or enable the parties to complete discovery more quickly or at less expense." *In re Chocolate Confectionary*, 607 F. Supp. 2d at 707. Resolution in Hanna

Holdings' favor would likely lead to quick resolution of Plaintiffs' antitrust claim, given that this Court has repeatedly noted that Plaintiffs have offered sparse factual allegations linking Hanna Holdings to the alleged conspiracy—making it unlikely that the Complaint would survive dismissal on a circumstantial evidence theory. As this Court explained in partially dismissing Plaintiffs' original complaint, if the NAR rules do not in fact constitute the agreement itself, then Plaintiffs did not allege enough additional facts to show that any agreement plausibly took place. *Davis v. Hanna Holdings, Inc.*, 787 F. Supp. 3d 42, 60 (E.D. Pa. 2025). This Court held that Plaintiffs' factual allegations—"that Hanna and its brokers are NAR members who follow the organization's rules; that its executives helped promulgate the complained-of NAR rules; and that Hanna and its coconspirators work together to enforce the rules in the MLSs that they jointly own"—were insufficient, and those allegations have not meaningfully changed. *Id.* And even if the case were to proceed, resolution of the horizontal agreement question would foreclose this complex issue and focus discovery, which would need to center on circumstantial evidence of agreement.

**CONCLUSION**

The Court should grant certification under 28 U.S.C. § 1292(b) for interlocutory review of the two questions presented.

Date: May 15, 2026

Respectfully submitted,

*/s/ David Z. Gringer*
David Z. Gringer*
Emily Barnet*
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.gringer@wilmerhale.com
emily.barnet@wilmerhale.com

Seth P. Waxman*
Claire M. Bergeron*
Jane E. Kessner*
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com
claire.bergeron@wilmerhale.com
jane.kessner@wilmerhale.com

John Brumberg
Pa. I.D. No. 311352
William Pietragallo II
Pa. I.D. No. 16413
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Fl.
Pittsburgh, PA 15219
(412) 263-1836
JRB@Pietragallo.com
WP@Pietragallo.com

*Attorneys for Hanna Holdings, Inc.*

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 15, 2026, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record registered with the CM/ECF system.

*/s/ David Z. Gringer*
David Z. Gringer

*Counsel for Hanna Holdings, Inc.*